WOODRUFF v. WOODRUFF.

(No. 40650—Decided April 26, 1965.)

Common Pleas Court of Miami County.

*Mr. John Fulker,* for p̲_____ **defendant.**
*Mr. Howard E. Swinehart,* for d̲_____ **plaintiff.**

PORTER, J. There is pending for decision a motion for change of custody filed by the defendant-father October 17, 1964. At the time it was filed, no service could be obtained on the plaintiff-mother and temporary custody was awarded to the defendant-father. Service was obtained later on the plaintiff-mother, and by agreement, the matter was referred for investigation.

It should be noted at the outset that the investigation was on the "hurry-up" side because it was needed to decide the motion for temporary custody. In other words, it was necessary in order to determine whether it would be best for the child to live with its father and stepmother pending the outcome of this motion for change of custody or with the maternal grandmother. It was necessarily sketchy, therefore, and not as extensive or thorough as it might have been if more time could have been given the investigator for making the investigation and preparation of his report.

This is mentioned because the report was not favorable to the plaintiff, and she and her counsel were very displeased.

Hence, when the matter was set for hearing, there was not only no agreement that the report could be received as evidence, but plaintiff's counsel desired to cross-examine the investigator to dispel any impression the court might have gained from reading the report just before the hearing.

This wish was respected by having the court call the investigator as its own witness and allowing the parties to cross-examine the investigator.

Lest this be taken as a precedent, this court wishes to state agreement with a recent holding by an outstanding judge that upon a motion to modify custody provisions of a divorce decree, a court is not limited to any particular line of inquiry, nor is it bound by strict legal rules governing the introduction of evidence. His holding (*Gumphrey* v. *Gumphrey*, No. 38454, Hennapin County, Minnesota) reported in the A. B. A. Family Law Section Newsletter, continues: ''While hearsay evidence alone is insufficient to support a modification of a custody order, the court may properly consider reports of court-appointed social workers.'' There it was held the court afforded parties a full hearing at which testimony and cross-examination could be employed. Apparently the fact that the order was based in part on hearsay testimony of court-appointed investigators was not arbitrary or unreasonable or an abuse of discretion. This was affirmed.

To get back on the track, the stated ground for the motion is that the plaintiff failed to provide a proper home for the child of the parties.

The evidence showed that the child in question is about 3½ years old—a little girl who is apparently a happy child.

The plaintiff-mother placed the child after the 1963 divorce with her mother, and plaintiff-mother lives with her mother also at the family home in Piqua. The grandmother ''took over'' in the role of mother, though the biological mother and the mother's sister, as well as the grandmother, all helped. There were charges that they did not keep the child clean; as a matter of fact, that it was allowed to become filthy at times; but the court has not found that evidence too important to the question at hand.

That question is considered to be whether the plaintiff did provide a proper home and whether there has been a substantial change in conditions since the previous custody order so as to merit a review. If so, what order is now required for the best interests of the child?

The court feels it is not necessary to go into complete detail on the evidence as to what the plaintiff has done. Suffice it to say, *plaintiff* has not provided any home. Her mother has, and plaintiff was evidently pushed out of the nest twice and attempted to establish a home in Troy—once in the Louise Apartments and once on Frank Street. The court finds that these were not proper homes. The plaintiff has had a number of jobs and moved to Chillicothe, Topeka and Illinois in the time since the marriage. On the occasion of her move to Illinois, the motion before the court was filed. At that time she approached her former husband and his present wife and asked if they would take the child for a couple of months until she got settled down in Illinois and was able to make a home.

There is a conflict as to exactly what was said then, but the basic fact is that she did ask them to take the child for two months then. The plaintiff-mother's mother admits that on this occasion, she and her present husband urged the plaintiff to establish her own home and take the child with her. Nevertheless, the plaintiff's mother would have the court believe that the reason she did this was that the plaintiff was planning to move to Illinois! And that she, being attached to the child, was so shaken up by this that she suggested that she get out. All this is hard to comprehend.

Also in the picture is the fact that plaintiff remarried in December 1963; that marriage was annulled by the person to whom she was married; and one of *his* witnesses was plaintiff's mother.

It was brought out that the plaintiff's mother testified at the annulment hearing that the plaintiff would not establish a home of her own for herself and her child, and that she and her husband were fed up with doing so. It was also brought out that the grounds for the annulment were that the plaintiff would not cohabit with the man who married her and the marriage was never consummated.

That brings us to consideration of the evidence as to the

changes which have happened to the defendant-father. Since the divorce, he has remarried, and his present marriage appears to be a stable one. He is well-employed, making over $100 a week as a truck driver at Eckerts. It is his present wife's first marriage. She is from a farm family and appears to have her feet on the ground and love for the child. This was reflected by the fact that she gave up a good job with Hobart Manufacturing Company in the I. B. M. Department in order to be able to devote full time to her duties as a step-parent. It is borne out by the testimony of the investigator also. The parties have a nice home now and are building their own home. Both the defendant and his present wife give a very good impression.

Worthy of note is the fact that since the divorce, the defendant has visited his child regularly on a weekly basis.

The plaintiff offered evidence to show that statements attributed to certain persons in the investigator's report were not true; further, that the child in question was not left unattended and was not filthy, as claimed. In this connection, as noted before, the evidence as to this and whether or not the Groff home was physically adequate has not seemed important to the court.

There was testimony by neighbors and a babysitter that the child was happy in the Groff home, but since leaving the home, she has been observed to be less happy, hangs her head when she has to go back from weekend visitations, etc.

In this connection, the investigator was called as the court's witness and testified that the Groff home was adequate and the father's home is also adequate. He testified that he observed the child in its present surroundings and it seemed happy to him. He said she jumped up on his knee when she woke up from her nap. She was in clean surroundings, well provided for, and the atmosphere did not seem restrictive.

Plaintiff called an expert, Lawrence Gorrell, and posed a hypothetical question, part of which assumed that the child was happy before its custody was temporarily transferred to its father but is not now happy and is in an atmosphere which is unduly restrictive, where it is scrubbed behind the ears, is kept clean, and there is a place for everything and everything in its place.

In this connection, the court finds that it cannot give credence to the assumption that the child is not happy now, and therefore cannot accept the testimony of the expert to the effect that going from a lax situation to one unduly restrictive can have harmful effects on a child of this age.

It is worth mentioning in passing that this witness did not dissent from the view that a child from three to six needs a mother *and* a father to develop normally, psychologically; also that from six to twelve, the big need of a child is for security, a home with a sense of family; and that in adolescence, the need of the child is for a degree of control (a view expressed by Dr. Herbert C. Modlin, Menninger Foundation, at 1963 A. B. A. Family Law Meeting).

I mention this because it seems to the court that the interest of the child will be served by awarding its custody to its father because the prospect for getting the things which it needs to develop normally and be happy are much better if custody is given to the father.

The other factors which are customarily taken into consideration in making an award of this kind have been considered. For instance, the stability of the parties, as well as the home, has been considered. We have already indicated that the court feels the child will have more security with the father and that we feel it will have as much, if not more, love and affection.

There is nothing in the record regarding school facilities or what will be best for the spiritual needs of the child, but I am sure these needs will be well met by the father. Of course, the child is too young for its wishes to be considered.

The court concludes that there has been a substantial change in conditions since the divorce decree.

It must be observed that this case is not between the grandmother and the defendant-father. Parents stand on equal footing. Section 3109.03, Revised Code. However, as between a parent and a grandparent, the "rights" of a parent are superior to those of a grandparent.

Since there is a substantial change in conditions, both in the father's situation and the mother's, and since the plaintiff has not herself provided a proper home, Section 3109.04, Revised Code, comes into play. It provides:

"Upon hearing the testimony of *either or both parents, cor-*

*roborated by other proof, the court shall decide which of them shall have the care, custody and control of the offspring,* taking into account that which would be for their best interest * * *. If the court finds, with respect to any child under eighteen years of age, that neither parent is a suitable person to have custody it may commit the child to a relative of the child or certify'' etc. (Emphasis added.)

While these matters are addressed to the discretion of the court, we are bound by this statute and familiar rules in exercising that discretion.

The duty to carefully exercise the discretion invested in a court in a contested custody matter is, along with sentencing, the most difficult and at the same time important duty the court has. What does it mean when we say that these decisions rest in the discretion of the court?

Though it will lengthen this decision, some discussion of this seems in order.

''Discretion is the power exercised by courts to determine questions to which no strict rule of law is applicable, but which, from their nature and the circumstances of the case, are controlled by the personal judgment of the court. It cannot be exercised where a strict rule of law is applicable, as the term discretion implies the absence of any such rule. * * *.'' *Trunk v. Hertz Corporation,* 95 Ohio Law Abs. 364, 367.

In a guide for trial judges proposed by the National Conference of State Trial Judges, a judge is urged to *exercise it fairly and impartially,* and, since such rulings are rarely reversed, to familiarize himself with the purpose of the grant and confine the exercise to that purpose. Also to state the grounds of his ruling so it can be reviewed intelligently.

This court is of the opinion that the *reasons for exercising discretion should not only be spelled out so a reviewing court can tell the basis of the court's decision, but so that counsel can know the basis of such decision.* It is ironical that if the court fails to do this, its chances of being affirmed are better than if the record is spelled out, and this is not as it should be. In many cases where the record is silent as to the reasons why the court exercised its discretion in the way that it did, a reviewing court concludes there was no abuse of discretion.

There are areas of total discretion, for reasons of admin-

istrative practicability and also because there is not time for courts of appeal to review such matters as whether a witness may be recalled, a case adjourned to a later date, etc. In these procedural matters, the discretion of the court might be said to be uncontrolled or "nearly total."

There are other categories, in one of which the discretion of the court is said to be "very wide," and an example of this is the discretion a court has to exercise in passing on a motion for a new trial. There are still other areas in which the discretion of the court is said to be "limited," an example of this being a contempt matter or a request to grant a remedy such as injunction, specific performance or declaratory judgment. As prominent a part as discretion plays in divorce and custody cases, it is surprising that so little is written about it. In the general text on Divorce and Annulment by Nelson there is one section, 15.50. In Ohio Jurisprudence, Vol. 17 at page 72, there is a section on discretion. The only general text on the subject known to this court is an old one, Bowers on Discretion. It contains no section on divorce and custody, but among the cases chosen for the graphic manner in which it illustrates some phase of a trial court's discretionary power is one on custody, *Miller* v. *Wallace*, 76 Ga. 479, 2 Am. St. Rep. 48.

Even so, I think judges who have had divorce jurisdiction for any length of time know from the seat of their pants that they have no greater responsibility than to carefully exercise the discretion vested in them to decide a disputed custody matter. Also, I think most would agree that their discretion in such matters is "limited" only in the sense that if there is a set rule, *e. g.*, Sections 3109.03, 3109.04 and 3109.06, Revised Code, it must be followed, that being one facet of the law of discretion.

In general, it can be said that discretion in custody matters is "very wide" and of course the main thing is to determine, within the framework of the rules, what is best for the child. However, it is becoming more and more appreciated that in this decision courts have a right to the help of experts, the use of investigators, and to consider hearsay (as long as the decision is not based entirely thereon). Courts can also question traditional concepts, such as that the mother is always best for a young child. They have a right to question whether the

parents' rights are not limited and that the children and society have rights (sometimes looked after by the appointment of a guardian ad litem).

There is more to the court's responsibility than resolving a dispute. The court must inquire into custody arrangements even where there is an agreement. Furthermore, the court's role may include the giving of *service* or seeing to it that service is given by follow-ups and giving appropriate handouts to the parents which may help them appreciate the child's rights and enable them to protect such rights.

One facet of the law of discretion is that *where there are set rules, they must be observed.*

Before closing this discussion on discretion, it might not be amiss to observe that one of the key words which keeps popping up in decisions is *"justifiable."* In other words, a court would do well to continually remind itself that the way it exercises discretion must be *justifiable.*

Also, an additional reason as to why a court should be careful in exercising discretion is because appellate courts, in reviewing such exercise, are reluctant to disturb it because it is generally appreciated that the trial judge has the superior *vantage point* and has the *pulse* of the case.

As to discretion generally, another key word is "prejudiced" because, in the exercise of discretion, the court must continually keep in mind—*who* will be *prejudiced* by the exercise and *how* will they be prejudiced? In a custody matter, however, the sole consideration is the welfare of the child. In a very real sense, the parents have limited rights, and only the child has absolute rights. Applying the law to the facts, the decision of the court is to grant the father's motion for change of custody and award custody to him, with reasonable visitation rights to the mother, such to be fixed by the court if the parties cannot agree thereon.

*Motion granted.*