ROACH, Appellant,

v.

ROACH, Appellee.

[Cite as *Roach v. Roach* (1992), 79 Ohio App.3d 194.]

Court of Appeals of Ohio,
Montgomery County.

No. 12703.

Decided April 8, 1992.

*Diane M. Kappeler,* for appellant.

*David W. Cox,* for appellee.

WOLFF, Judge.

Russell E. Roach, appellant, has appealed from a decision and judgment of the Montgomery County Court of Common Pleas, Division of Domestic Relations, confirming a permanent order of custody, based on a report and recommendation of the court's referee entered June 12, 1990. The decision

and judgment confirming the permanent order was entered on January 29, 1991. The pertinent procedural history is as follows.

On July 10, 1989, both Vicki Roach, appellee, and Russell Roach filed complaints for divorce. On that same date, Vicki also filed a motion for temporary custody of the Roach's minor daughter, Ashley. The trial court granted this motion and executed an ex parte temporary order of custody. On August 8, 1989, the trial court again considered the issue of temporary custody and again awarded custody to Vicki.

On November 29, 1989, the decree of divorce was entered, and the trial court referred the issues of custody, child support, and visitation to a referee. The hearings on these issues were held on January 16, January 17, March 12, and April 16, 1990.

The referee's recommendation was to award permanent custody of Ashley to Vicki. Russell filed timely objections to this report. After considering these objections, the trial court adopted the referee's report and recommendation, and awarded permanent custody of Ashley to Vicki. From that judgment, Russell brings this timely appeal in which he advances six assignments of error.

"I. The trial court committed prejudicial error by denying plaintiff/appellant's constitutional right to a hearing of his motions for temporary custody of the parties [*sic*] minor child."

In this assignment of error, Russell contends that Vicki's simultaneous filing of her complaint for divorce and motion for temporary custody is contrary to Ohio law, and, further, that the trial court's refusal to grant a hearing on the issue of the ex parte temporary custody order constituted a denial of his constitutional right to due process. In response, Vicki argues that Russell was not entitled to a hearing on the custody order because his verbal request for the hearing did not comply with the procedure established in Civ.R. 75(M)(2) and Local Rule 4.05 of the Montgomery County Rules of the Domestic Relations Division and the Juvenile Division.[1]

In Montgomery County, the proper procedure for requesting a hearing is contained in the rules stated above. Civ.R. 75(M)(2) and Loc.R. 4.05 state in pertinent part:

---

1. Effective July 1, 1991, the domestic relations division adopted its own rules, and this section is now only applicable to the Juvenile Division. A similar section is now contained in Rule 4.18 of the Montgomery County Rules for the Domestic Relations Division. The proceedings giving rise to this appeal took place prior to July 1, 1991.

Civ.R. 75(M)(2):

"Upon request, *in writing,* after any temporary spousal support, child support, or order allocating parental rights and responsibilities for the care of children is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order." (Emphasis added.)

Loc.R. 4.05:

"It is the responsibility of counsel for the party who seeks an oral hearing to obtain the date and time for such hearing from the office of the assignment commissioner and to give notice of the date and time of the oral hearing to the opposing party."

Our review of the trial record indicates that while Russell did indeed make a written request for an oral hearing concerning the ex parte temporary custody award as required by Civ.R. 75(M)(2), he failed ·to obtain a hearing date and time or to notify the opposing party as required by Loc.R. 4.05. Thus, Russell did not comply with the requirements of Loc.R. 4.05 and was not entitled to a hearing on this matter.

Accordingly, the first assignment of error is overruled.

"II. The trial court's admission into evidence of psychologist Barbra Bergman's report in the absence of any testimony by the person who wrote the report was prejudicial, reversible error."

■ In this assignment of error, Russell contends that the trial court erred in admitting into evidence the court-ordered report of psychologist Dr. Barbra Bergman. Specifically, Russell argues that the admission of this report into evidence without the testimony of the doctor violated R.C. 2317.36, which states in pertinent part:

"A written report or finding of facts prepared by an expert who is not a party to the cause * * *· and containing the conclusions resulting wholly or partly from written information furnished by the co-operation of several persons acting for a common purpose, shall, in so far as the same is relevant, be admissible when testified to by the person, or one of the persons, making such report or finding without calling as witnesses other persons furnishing the information * * *."

In addition, Russell contends that the language of R.C. 3109.04(A), which governs custody proceedings, supports his position. R.C. 3109.04(A) [2] states:

"Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth

---

**2.** Effective April 11, 1991, this language appears at R.C. 3109.04(C). The proceedings giving rise to this appeal took place prior to April 11, 1991.

of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or his counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report. The court may tax as costs all or any part of the expenses of each investigation."

While acknowledging that R.C. 3109.04(A) authorizes a trial court to order such psychological investigations and reports, Russell insists that the statute does not imbue the resulting report with evidentiary status. Therefore, Russell concludes that psychological reports ordered by the court pursuant to R.C. 3109.04(A) are not admissible into evidence absent a stipulation of the parties or testimony of the examining psychiatrist. In support of this contention, Russell cites the cases of *Beamer v. Beamer* (1969), 17 Ohio App.2d 89, 46 O.O.2d 118, 244 N.E.2d 775, and *McQueary v. McQueary* (1964), 29 O.O.2d 24, 200 N.E.2d 722, which we discuss, *infra*.

Although Russell places great reliance on the dictates of R.C. 2317.36, such reliance is largely misplaced in this instance because it is R.C. 2317.39, not 2317.36, which generally controls the admissibility of court-ordered investigations, and Civ.R. 75(D) and 3109.04(A), which control the admission of such evidence in cases involving child custody in divorce matters. R.C. 2317.39 and Civ.R. 75(D) are, in pertinent part, as follows.

R.C. 2317.39:

"Whenever an investigation into the facts of any case, civil or criminal, pending at the time of such investigation in any court, is made * * * by any court * * * or any other persons, and a report of such investigation is prepared for submission to the court, the contents of such report shall not be considered by any judge of the court * * * before the trial of the case or at any stage of the proceedings prior to final disposition thereof, unless the full contents of such report have been made readily available and accessible to all parties to the case or their counsel. The parties or their counsel shall be notified in writing of the fact that an investigation has been made, that a report has been submitted, and that the contents of the report are available for examination. Such notice shall be given at least five days prior to the time the contents of any report are to be considered by any judge of the court wherein the case is pending * * *.

"This section does not apply only to the utilization of the contents of such reports as testimony, but shall prevent any judge from familiarizing himself

with such contents in any manner unless this section has been fully complied with."

Civ.R. 75:

"(D) Investigation. On the filing of a complaint for divorce, annulment, or legal separation, where minor children are involved * * *, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action. The report of investigation shall be made available to either party or their counsel of record upon written request not less than seven days before trial. The report shall be signed by the investigator and the investigator shall be subject to cross-examination by either party concerning the contents of the report. The court may tax as costs all or any part of the expenses for each investigation."

Thus, the portions of R.C. 2317.39 and Civ.R. 75(D) which contemplate the use of investigation reports as evidence are virtually identical, the one notable exception being that R.C. 2317.39 includes a notification requirement while Civ.R. 75(D) does not. Even so, Civ.R. 75(D) requires that the report be made available to the parties upon request. Moreover, these sections are consistent with R.C. 3109.04(A), upon which Russell relies. In fact, R.C. 3109.04(A) is almost indistinguishable from Civ.R. 75(D), the only notable difference between these sections being the number of days prior to trial within which such investigation reports are to be made available to the parties.

Although Russell is indeed correct in his observation that R.C. 3109.04(A) does not expressly state that custody-investigation reports may be admitted as evidence, we cannot accept his ultimate conclusion that this lack of express authority to admit these reports necessarily indicates that such authority was neither contemplated nor conferred. Rather, we would hold that the language of both R.C. 3109.04(A) and Civ.R. 75(D) implicitly confers upon the trial court the authority to admit custody-investigation reports into evidence. Both R.C. 3109.04(A) and Civ.R. 75(D) authorize the trial court to order such reports and expressly provide that both parties shall have the right to cross-examine as to the contents of that report. Clearly, neither of these provisions would be necessary if the report were not intended to be used by the trial court in making its determination of custody. Indeed, the right to cross-examine as to the contents of the report presupposes that the report will be utilized as evidence.

Further, our holding that R.C. 3109.04(A) and Civ.R. 75(D) implicitly grant the authority to consider custody-investigation reports as evidence is also supported by the fact that R.C. 2317.39 *expressly* authorizes a trial court to admit any court-ordered investigation report into evidence as testimony. This general authorization applies to custody-investigation reports, at least until

such time as the legislature expressly indicates otherwise. We find nothing in either R.C. 3109.04(A) or Civ.R. 75(D) which indicates that the authority granted to trial courts in R.C. 2317.39 is inapplicable in custody cases.

The cases cited by Russell are not directly applicable to this case because they involve versions of custody statutes which are no longer in existence. While these cases may provide a historical perspective for a discussion of the admissibility of court-ordered investigation reports in custody cases, they are not controlling precedent on the issue.

In its very thorough and well reasoned opinion in *Corrigan v. Corrigan* (Dec. 30, 1986), Ross App. No. 1300, unreported, 1986 WL 15205, the Court of Appeals for Ross County considered the same issue now before this court, examined the development of the law in this area, and concluded that court-ordered custody-investigation reports are properly admissible as evidence. We agree.

A summary of our research on the issue of the admissibility of such court-ordered reports, coupled with that of the *Corrigan* court, is as follows.

R.C. 3109.04, the current statute authorizing court-ordered investigations in custody cases, is the product of a legal evolution which began in 1938 with the enactment of G.C. 11979-4, which provided:

"On the filing of a divorce or for alimony, the court, in its discretion, may appoint one of its officers to make an investigation as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action, and if the report of said investigation is filed in the case before trial, *may be considered as evidence in the case,* subject to the right of either party to cross-examine the party making the investigation." (Emphasis added.)

This statute was interpreted to permit the trial court to consider the report as evidence so long as the two statutory prerequisites of filing and the ability to cross-examine the investigator were satisfied.

In 1951, G.C. 11979-4 was replaced with R.C. 3105.08 and 2317.39. Although this statutory modification involved many changes, the revision most significant to our analysis is the deletion of the previous language in G.C. 11979-4 which expressly authorized trial courts to consider custody-investigation reports as evidence. In evaluating the import of this revision, the majority of courts determined that R.C. 3105.08 and 2317.39 were designed to dispossess such investigation reports of any special evidentiary status they had previously enjoyed. *Beamer v. Beamer, supra; McQueary v. McQueary, supra.* Thus, investigation reports could henceforth only be

admitted into evidence if the normal rules of evidence permitted the admission.

One of the courts holding that these statutes limited the evidentiary status of investigation reports did so while acknowledging that this interpretation was problematic in that:

"[T]he judge is placed in a somewhat anomalous position by sections 3105.08 and 2317.39 * * *. He is required to read the report before the hearing, hearsay and all. His decision, however, must be based solely on the record. The law presumes that the judge will follow the rules of evidence and disregard the hearsay. To what extent this is humanly possible is open to question." *McQueary, supra,* 29 O.O.2d at 28, 200 N.E.2d at 727.

However, some courts avoided this "anomalous" situation altogether by holding that although R.C. 3105.08 did not expressly grant the authority to consider such investigation reports as evidence, neither did it divest the trial courts of the authority to do so which they had always possessed as a derivative of their considerable discretion in custody matters. To support this contention, these courts argued that the determination of custody matters is one of the most difficult and important duties of any court and that courts therefore have "a right to the help of experts, the use of investigators, and to consider hearsay (as long as the decision is not based entirely thereon)." *Woodruff v. Woodruff* (1965), 7 Ohio Misc. 87, 92–93, 36 O.O.2d 165, 169, 217 N.E.2d 264, 269. See, also, *Hillard v. Hillard* (1971), 29 Ohio App.2d 20, 23, 58 O.O.2d 14, 15, 277 N.E.2d 557, 558.

In 1971, perhaps in recognition of the controversy created by R.C. 3105.08, the legislature repealed this section, and Civ.R. 75(D) became the controlling rule. Civ.R. 75(D), quoted *supra,* reincorporated the right to cross-examine as to the contents of an investigation report. However, it did not include the language of the G.C. 11979–4 expressly granting these reports special evidentiary status.

Nonetheless, commentators have interpreted the legislature's acceptance of Civ.R. 75(D) as a departure from the *Beamer* approach and as an implicit adoption of the *Woodruff* approach. *Corrigan, supra;* Note, Divorce Investigation Reports in Ohio Child Custody Determinations (1975), 25 Case Wes. Res.Law Rev. 347, 365.

■ In *Corrigan,* the court of appeals approved this interpretation and stated:

"[T]he parties are afforded sufficient due process protection by virtue of the availability of the right to cross-examine the court-appointed investigator. Additionally, a strict adherence to the normal rules of evidence would greatly

reduce the effectiveness of such reports, which often contain hearsay * * *. The purpose of the rules of evidence is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined * * *. [S]uch purpose is better served by the relaxation of such rules when the requirements of Civ.R. 75(D) have been met."

We concur with this view and hold that R.C. 3109.04(A), 2317.39, and Civ.R. 75(D), taken together, authorize a trial court to consider court-ordered custody-investigation reports as evidence.

Accordingly, the second assignment of error is overruled.

"III. The trial court committed prejudicial error by failing to admit into evidence the 'excited utterance' of the child."

In this assignment of error, Russell argues that the trial court erred in refusing to admit into evidence that portion of his mother's testimony involving statements purportedly made to her by Russell's daughter, Ashley. These statements were to the effect that Vicki's sister had coerced Ashley to falsely accuse Russell of abuse by telling the child that she would not see any of her family again if she did not lie about her father. Because such statements are clearly subject to exclusion under the hearsay rule, Russell attempted to offer them under the "excited utterance" hearsay exception.

Evid.R. 803, which establishes those categories of hearsay which are exempted from the exclusionary rule, states:

"The following are not excluded by the hearsay rule * * *:

"* * *

"(2) Excited utterance. A statement relating to the startling event or condition made while the declarant was under stress of excitement caused by the event or condition."

In order to establish that the offered testimony falls within this hearsay exception, one must prove:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declaration the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement

or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, paragraph one of the syllabus. See, also, *State v. Lumpkin* (Oct. 25, 1991), Greene App. No. 90 CA 82, unreported, 1991 WL 216919.

■ The foundation which Russell presented as justification for admitting Ashley's statements into evidence is as follows:

(Questioning of Russell's mother)

"Q. And at some point during that visit, did Ashley come to you?

"A. Yes, she did.

"Q. Please describe in as much detail as you can recall what was Ashley's appearance at the time.

"A. She was crying. She was withdrawn, shaky and fidgety and pulling at her hair like—just—like she was all upset about something.

"Q. And did she stand beside you? Where did she go? What did she do?

"A. She crawled up on my lap like she always does.

"Q. When you say crying, do you mean tears or verbally?

"A. Yes. She—tears and verbally.

"Q. And what, if anything did you say to her?

"A. I asked her where Nanna's smile was at and why was she so upset.

"Q. And what did she reply?"

At this point, Vicki's counsel objected to the testimony, and the following exchange occurred:

"THE COURT: Sustained.

"[Russell's Counsel]: Your Honor, I believe I have laid sufficient evidence for an excited utterance.

"THE COURT: Sustained.

"[Russell's Counsel]: I would ask to proffer it."

At which time, the referee absented himself from the room, and the following testimony was presented.

"Q. What did the child say to you on that occasion?

"A. She says, 'I don't get to see my mommy and my daddy and my Aunt Alma or Sister anymore.' I said, 'Why? Who told you that[?]' and she says,

'If you don't tell the doctors that Daddy hurt me, Sissy says I don't get to see nobody no more.'"

■ In evaluating this assignment of error, we acknowledge that the determination of whether a hearsay declaration should be admitted under the excited-utterance exception is largely within the discretion of the trial court. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220; *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140. See, also, *State v. Duncan, supra.* However, in exercising this discretion, a trial court is required to examine all of those factors which are essential to the determination of whether the offered testimony meets the excited-utterance hearsay exception. In other words, the trial court must evaluate whether the offered testimony was of a hearsay statement that (1) related to and was the product of (2) a startling event (3) of sufficient magnitude to still the reflective faculties of the declarant (4) who personally observed the matters asserted in the testimony (5) and made the statement prior to recovering his reflective capabilities. A failure to consider each of these factors is improper.

In this case, the referee, apparently believing that he was obligated to leave the courtroom during the proffer, did not have sufficient information from which he could evaluate all of the above factors. Specifically, at the time the referee absented himself prior to the proffer, Russell had only been able to present testimony that Ashley was upset during her conversation with her grandmother. Nothing in that testimony would have indicated to the referee what the claimed "startling event" was, whether that event was of sufficient magnitude to still Ashley's reflective capabilities, whether her reflective capabilities were stilled at the time of her statement, or whether Ashley had personally observed the matters related in her statement.

■ We appreciate the referee's attempt to avoid hearing inadmissible testimony and recognize the difficulties inherent in cases where the trier of fact and the judge are one. However, in situations where the determination of whether testimony is admissible necessarily requires that that testimony be heard, the trial court must hear that testimony. Should the trial court ultimately determine that the testimony is inadmissible, it would, of course, be obligated to disregard what it has heard. This procedure of disregarding inadmissible evidence is commonplace in jury trials, and there is no reason why it cannot be employed in cases where the judge acts personally, or by a referee, as the trier of fact. Indeed, if anything, we are more confident about the procedure in the latter instance because judges and referees are cognizant of the importance of disregarding inadmissible testimony.

Accordingly, we find that the referee's failure to consider all of the testimony offered to establish the elements of the excited-utterance hearsay exception was error.

■ However, we further find that this error was harmless. The testimony which Russell attempted to offer under the hearsay exception was intended to refute the allegations that Russell had sexually abused Ashley by establishing that the child was coerced into lying about her father. While this testimony, if admitted, may have been crucial to Russell's case had the referee and trial court believed these allegations of abuse, such is not the case. Several factors militate against any implication that the referee might have believed these allegations. First, and foremost, the referee expressly stated in his report:

"In July 1989 plaintiff indicated that he would attempt to gain custody. Within a week or so the defendant alleged sexual abuse of Ashley. The child was examined by Children's Medical Center. No physical evidence of abuse was found. A Children Services Board investigation was also done. No action was taken as a result of that investigation."

Second, the psychologist, upon which the referee relied, likewise concluded that she could "draw no conclusions within 'reasonable psychological certainty' in regard to the sexual abuse." Finally, it is clear from the referee's report, and from the trial court's adoption of that report, that the award of custody to Vicki was not in any way based on these allegations.

Accordingly, the third assignment of error is overruled.

"IV. Prejudicial, reversible error occurred [sic] when a single finding of fact, without evidentiary basis was used to nullify multiple findings of fact which were based upon the evidence given by several witnesses."

■ In this assignment of error, Russell contends that the trial court erred in adopting the referee's finding that although Vicki had consumed alcohol excessively prior to the divorce, she was no longer doing so at the time of the custody hearings. Russell argues that there was no evidence to support this latter conclusion and that the referee merely utilized this "fact" to justify his recommendation.

Our review of the record indicates that Russell was quite aggressive in his attempts to prove that Vicki was an unfit custodian of Ashley because she had a drinking problem. In fact, several witnesses were called to the stand solely to testify that they had observed Vicki in a drunken state, and all of Russell's other witnesses were questioned about her drinking. While all of these witnesses substantiated Russell's contention that Vicki had at times consumed too much alcohol, we find it quite significant that no one testified that they

had seen her drinking during the period after the divorce and prior to the custody hearings. Indeed, much of the testimony concerning Vicki's conduct involved incidents which took place prior to the parties' separation.

Given that Russell, despite his persistent attempts to prove that her drunken behavior made her an unfit custodian, was unable to present testimony that Vicki was still consuming alcohol excessively at the time of the hearing, we find that the referee could reasonably infer that such behavior had abated.

Accordingly, the fourth assignment of error is overruled.

"V. The court below erred as a matter of law and to the prejudice of the appellant in refusing to make an independent original determination of custody as required by Section 3109.04 of the Ohio Revised Code and such constitutes an abuse of discretion."

In interpreting those statutes which contemplate the role of trial courts and referees in judicial proceedings, *i.e.*, Civ.R. 53(E) and R.C. 3109.04, Ohio courts have universally held that the practice of allowing referees to assist trial courts in the expedition of the court's business is laudable. However, these courts caution that it must not be forgotten that referees do so in an advisory capacity only. Thus, referees do not have the authority to render final judgments, and trial courts must make an independent analysis of the underlying facts involved in the dispute prior to adopting a referee's report. See *Garcia v. Tillack* (1983), 9 Ohio App.3d 222, 9 OBR 372, 459 N.E.2d 918; *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 2 OBR 653, 443 N.E.2d 161; *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807. A trial court may not "merely rubber-stamp" the referee's report by deferring to the referee's judgment. *Logue v. Wilson* (1975), 45 Ohio App.2d 132, 136, 74 O.O.2d 140, 143, 341 N.E.2d 641, 644.

In this assignment of error, Russell contends that the trial court abdicated this legal duty and deferred entirely to the judgment of the referee. In support of this contention, Russell points to the following excerpt from the trial court's decision and entry:

"[T]he referee heard four days of testimony, reviewed all of the exhibits and was able to assess the credibility of the witness. It was the judgment of the referee that it would be in the best interest of the child that she be raised with the mother. Therefore, plaintiff's objections are found not to be well taken and hereby overruled on this matter."

While this language does indeed suggest that the trial court deferred to the judgment of the referee, the decision and entry contains another statement,

which Russell chose not to bring to our attention, which expressly indicates the contrary. Specifically, the trial court stated:

"The court has carefully considered the findings of fact contained in the report of the referee as well as the merits of the report recommendation and permanent order, transcripts, objections and memorandum contra filed, and it is the judgment of the court that: * * *."

Thus, the trial court has expressly stated that it considered those items necessary to an independent determination of the facts of this case. Absent any clear showing to the contrary, we will accept the trial court's word that it did so.

The fifth assignment is overruled.

"VI. The trial court's decision was against the manifest weight of the evidence."

As we have previously noted, the discretion of the trial court in custody disputes is quite broad. This extensive discretion was recognized by the Ohio Supreme Court in *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774, in which the court stated:

"In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record. * * *"

In 1988, the court reiterated its recognition of such discretion in custody cases when it held that:

"[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74 [523 N.E.2d 846, 849]."

Moreover, this broad discretionary power of the trial court necessarily limits the authority of an appellate court to reverse a custody decision as being against the manifest weight of the evidence. *Thrasher v. Thrasher* (1981), 3 Ohio App.3d 210, 214, 3 OBR 240, 243, 444 N.E.2d 431, 434. The trial court's decision is presumed to be correct, and a reviewing court may only reverse a custody decision upon a showing of an abuse of discretion. *Miller v. Miller, supra,* 37 Ohio St.3d at 74, 523 N.E.2d at 849. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112.

We have thoroughly reviewed the record below and find nothing to suggest that the trial court abused its discretion in awarding custody to the mother.

The record discloses that both parties love Ashley and desire to do what is best for her. However, the record also indicates that while Russell is currently a committed parent, and has even successfully completed parenting classes to improve his skills in this area, he was not primarily involved in taking care of Ashley in her infancy. For instance, Russell was in the Marines and away from home on sea duty during Ashley's first year of life. During that time Ashley bonded primarily with her mother.

Further, the court-appointed psychologist, Dr. Bergman, observed both parents interacting with Ashley and found that Ashley seemed more affectionate towards her mother and was more pleasant and lively in the mother's presence. Pursuant to these observations, in conjunction with those she made in her individual examinations of the parents, Dr. Bergman recommended that custody be given to Vicki Roach.

Much of the other evidence presented at the custody hearings, *i.e.*, testimony concerning allegations of Vicki's habitual drinking and Russell's improper disciplinary approach, was in conflict. However, we find nothing in this conflicting testimony which leads us to conclude that the trial court adoption of the referee's report was arbitrary or unreasonable.

Rather, we find that the evidence reasonably supports the referee's report and recommendation, and the judgment adopting the report.

Accordingly, the sixth assignment of error is overruled.

The judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, will be affirmed.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.