MILLER, Appellee,

v.

MILLER, Appellant.

[Cite as *Miller v. Miller* (1996), 115 Ohio App.3d 336.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–96–26.

Decided Nov. 20, 1996.

*Donald J. Guernsey*, for appellee.

*James R. Gucker*, for appellant.

Hadley, Presiding Judge.

This is an appeal from the Seneca County Court of Common Pleas judgment granting a motion for a change in custody of the parties' two children.

On September 14, 1993, Linda E. Miller ("appellee") filed a complaint for divorce against Jerome P. Miller ("appellant"). The court awarded temporary custody of the couple's two children, Kris and Kurtis, to appellee on October 15, 1993.[1] The trial court granted the divorce on December 22, 1993.

As part of that decree, the court included a shared parenting plan in which the parties shared the parental rights and responsibilities of both children.[2] Under this plan, the parties alternated months in which they had physical custody of the children with each parent having physical custody of both children for six months.[3] Appellee was designated the residential parent of both children and both parties were appointed legal custodians of the children. Appellant was further required to pay appellee child support in the amount of $81.56 per week plus poundage.

On September 5, 1995, the court held a hearing on appellee's motion for change of custody. After hearing testimony from several witnesses who spoke on behalf of both appellant and appellee,[4] the trial court decreed that appellee was to be the residential parent of Kris and appellant was to be the residential parent of Kurtis.[5] The court further determined that this agreement was subject to review in six months.

On February 1, 1996, appellee filed a motion to change custody requesting that she be named residential parent of Kurtis. The court appointed a guardian ad litem at appellee's request.[6]

---

1. Kris is the natural son of appellee who was later adopted by appellant after the couple married. Kurtis is the natural son of both appellant and appellee.

2. Appellant and appellee had previously agreed to this plan prior to their final divorce hearing.

3. Holidays and weekends were divided by agreement.

4. A total of seven witnesses were subpoenaed for the hearing, including appellant and appellee.

5. This entry was not filed until January 17, 1996. No explanation was offered by either party as to why the September 5, 1995 judgment was not filed until January 17, 1996.

6. The guardian ad litem conducted interviews with Kurtis on two separate occasions. The first interview was conducted at appellant's house, and the second interview took place at appellee's house.

On May 15, 1996, the court conducted an in-camera interview of seven-year-old Kurtis with the guardian *ad litem*. During the interview, the guardian gave the court his written recommendation for custody.[7] No record was made of the interview with Kurtis.

Thereafter, the court heard testimony from both parties and several witnesses who testified on behalf of appellant and appellee.[8] Appellant also introduced several exhibits from Kurtis's school in Bettsville.

At the conclusion of the hearing, the court submitted the matter for consideration and on May 20, 1996, issued a judgment entry granting appellee's motion for change of residential parent. Appellant immediately filed a motion for reconsideration of this judgment as well as a request for findings of fact and conclusions of law.

On June 21, 1996, the trial court denied appellant's motion for reconsideration. It is from these proceedings that appellant is appealing with the following assignments of error:

Assignment of Error No. 1

"The trial court erred and abused its discretion when it relied on an incorrect standard, failing to require plaintiff to prove a change in circumstances and that the modification was necessary to serve the best interests of the child, and granting appellee's motion for a change of custody."

Under R.C. 3109.04(E)(1)(a), a trial court may not modify a prior custody decree unless it finds that a change in circumstances has arisen and the modification is necessary to serve the best interests of the child.[9] The inquiry into an initial custody decree, on the other hand, only requires the court to use the best interests of the child in rendering its decision. *Rowe v. Franklin* (1995), 105 Ohio App.3d 176, 180, 663 N.E.2d 955, 957–958. Appellant contends that the trial court erred when it classified the custody decree of January 17, 1996 as an initial decree.[10]

---

7. The parties were given only the last four pages of the guardian *ad litem*'s report. The other pages were not released to either party.

8. The guardian *ad litem* was not cross-examined regarding the contents of his recommendation.

9. R.C. 3109.04(F)(1) lists all the relevant factors a court must use in determining the child's best interest.

10. In its June 21, 1996 journal entry including findings of fact and conclusions of law, the court rejected the change of circumstances requirement and declared the January decision to have been a temporary decree due to its having reserved the right to review the decision in six months.

■ R.C. 3109.21(F) defines an initial decree as the first decree allocating parental rights and responsibilities, whereas R.C. 3109.21(G) defines a modification as any subsequent decree modifying or replacing an earlier decree. Thus, the real issue is what type of decree was the January 17, 1996 decree.

The record reveals that the court originally designated appellee as the residential parent of both children as part of the couple's divorce decree, which was granted on December 22, 1993.[11] Under R.C. 3109.04(D)(1)(d), any court-approved shared parenting agreement that is appended to the final divorce decree has immediate effect as a final decree of custody, subject to modification or termination. Therefore, the December 22, 1993 shared parenting plan became the first decree allocating parental rights and responsibilities between appellant and appellee.

Consequently, the subsequent custody decree on January 17, 1996 was a modification of the initial custody decree and, therefore, required the trial court to use the "best interests of the child" test as well as find a change in circumstances pursuant to R.C. 3109.04(E)(1)(a). However, appellee maintains that regardless of the trial court's classification of the January 17 decree, the court nevertheless applied the best interests of the child test as well as a change of circumstances test in rendering its decision on May 20, 1996.[12]

■ Despite the trial court's contention that a change of circumstances would have been met if it had applied that standard during the May 15, 1996 hearing, the record reflects that the trial court only used the best interests of the child standard in rendering its decision, as evidenced by its classification of the January 17, 1996 decree as temporary. In misclassifying the January custody decree, we find, the trial court acted unreasonably. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. Therefore, we find that the trial court erred in using an incorrect legal standard for modifying a prior custody decree.

Accordingly, appellant's first assignment of error is well taken.

Assignment of Error No. 2

"The trial court erred and abused its discretion by ruling that even if it relied on an incorrect legal standard, there was a change of circumstances established

---

11. The designation was part of a shared parenting plan which was accepted by the court, signed by both parties and attached as part of the divorce decree.

12. Appellee cites a portion of the trial court's June 21, 1996 journal entry wherein the court held: "[E]ven under a change of circumstances standard, the plaintiff had established that the advantages of fostering the sibling relationship would have outweighed any, if any harm, of the change of custody."

by appellee and the advantages of a change of custody were outweighed by the harm, and granting appellee's motion for a change of custody."

Assignment of Error No. 3

"The trial court's decision was against the manifest weight of the evidence, and the trial court erred and abused its discretion by granting appellee's motion for a change of custody."

The above assignments of error are being considered together due to their close relationship to each other.

▪ In reviewing a trial court's decision in a child custody matter, an appellate court must uphold the decision absent an abuse of discretion. *Blakemore, supra.* An abuse of discretion constitutes "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id.,* 5 Ohio St.3d at 219, 5 OBR at 482, 450 N.E.2d at 1142. Consequently, "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849. Therefore, an appellate court may not independently review the weight of the evidence in the majority of cases. *Id.*

▪ In reviewing appellant's remaining issues, we are rather troubled at the lack of evidence found in the record to support the court's decision. Most disturbing is the missing guardian *ad litem* report, as the court admits in its judgment entry denying appellant's motion for reconsideration that it relied on that report in making its decision despite the fact that it released only the last four pages of the report to both parties on the day of the hearing.

The court is correct in stating that a trial court does not err "in considering the home-study report as evidence in the absence of sworn testimony" about the contents of the report. *Sayre v. Hoelzle–Sayre* (1994), 100 Ohio App.3d 203, 209, 653 N.E.2d 712, 716. However, a court is authorized to admit such reports as testimony only when the contents of that report are made available to the parties and utilized by the court in accordance with R.C. 2317.39. *Id.*

R.C. 2317.39 [13] states:

"Whenever an investigation into the facts of any case, civil or criminal, pending at the time of such investigation in any court, is made, conducted, or participated in, directly or indirectly, by any court * * * and a report of such investigation is prepared for submission to the court, the contents of such report shall not be

---

**13.** R.C. 3109.04(A), 2317.39 and Civ.R. 75(D), taken together, authorize a trial court to consider court-ordered custody investigation reports as evidence. *Roach v. Roach* (1992), 79 Ohio App.3d 194, 607 N.E.2d 35.

considered by any judge wherein such case is pending * * * unless the full contents have been made readily available and accessible to all parties to the case or their counsel. * * * This section * * * shall prevent any judge from familiarizing himself with such contents in any manner unless this section has been fully complied with."

In this case, the court released only the last few pages of the guardian *ad litem*'s report to the parties. Moreover, the court did not release those pages until the day of the hearing, in further violation of R.C. 2317.39.[14] Clearly, the court violated R.C. 2317.39 regarding its consideration of the guardian *ad litem*'s recommendation. Therefore, the recommendation was improperly considered by the trial court and cannot be used in determining whether a change of custody was warranted in the case *sub judice.*

Turning to the remaining evidence, we note that under R.C. 3109.04(E)(1)(a), modification of a prior custody decree is provided for as follows:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless one of the following applies:

" * * *

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

In construing R.C. 3109.04, the Ohio Supreme Court has stated that with respect to a modification of custody, the primary concern of the statute is the best interest of the child. *Gardini v. Moyer* (1991), 61 Ohio St.3d 479, 484, 575 N.E.2d 423, 426–427, citing *Birch v. Birch* (1984), 11 Ohio St.3d 85, 87, 11 OBR 327, 329–330, 463 N.E.2d 1254, 1256–1257. To determine what is in the best interest of a child, R.C. 3109.04(F)(1) lists several factors for consideration. Those relevant to this case include:

"(a) The wishes of the child's parents regarding his care;

"(b) The wishes and concerns of the child, as expressed to the court;

"(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

---

14. Under R.C. 2317.39, the parties must be notified of a report's existence at least five days prior to the time the contents of the report are to be considered by a judge. Further, the full contents of that report must be available for examination.

"(d) The child's adjustment to his home, school and community;

"(e) The mental and physical health of all persons involved in the situation."

In this case, the record reflects that the child was acclimated to his father's home, school and community.[15] At the time of the hearing, Kurtis was currently involved in Little League baseball and swimming lessons. He was also performing well, both socially and academically, at school.[16]

Despite these factors, appellee maintains that Kurtis and Kris's relationship had deteriorated to such an extent that a change of circumstances significant to support a change of custody had arisen. However, we find this contention to be without merit. The record does not reflect that the sibling relationship has deteriorated in any significant way since Kurtis has been living with appellant. On the contrary, all of the witnesses testified that Kurtis and Kris were close despite their age difference.[17] Moreover, under the terms of the January 17, 1996 decree, Kurtis and Kris were together every weekend[18] as well as one night every week. Therefore, the record does not reflect any significant deterioration in their sibling relationship that would warrant a change of custody in this case.

Furthermore, the record does not reveal any evidence that the appellant was unsuitable to have custody. Nor does it reveal any benefit to the child from a proposed change in custody that would outweigh the risk of harm which may come about as a result of such a change. Therefore, the trial court erred when it granted custody of Kurtis to appellee.

Accordingly, appellant's second and third assignments are sustained. The judgment of the Seneca County Common Pleas Court is reversed and the cause remanded for further proceedings in accordance with the law and this opinion.

*Judgment reversed*
*and cause remanded.*

SHAW and THOMAS F. BRYANT, JJ., concur.

---

15. Kurtis had lived in the Bettsville area his entire life with the exception of six months when he lived with appellee in Fostoria. Several relatives live in close proximity to appellant's farm in Bettsville.

16. Kurtis was receiving special assistance with his speech by a speech pathologist at Bettsville school. Additionally, Kurtis has been receiving help with his studies from appellant and his new wife.

17. At the time of the hearing, Kris was fourteen and Kurtis was seven.

18. Appellant and appellee alternated custody of the boys on the weekends.