OPINION
Plaintiff-appellant John W. Pauley appeals from an order of the court of common pleas, domestic relations division, denying his motion to terminate or to modify his spousal support obligation to his former spouse, defendant-appellee Judith Pauley. Mr. Pauley contends that the trial court failed to conduct a de novo review of the magistrate's decision, merely "rubber-stamping" the magistrate's determination that the current financial downturn in his business was voluntary and therefore did not provide an adequate basis to terminate or modify his support obligations.
Although we presume, from this record, that the trial court conducted ade novo review of the magistrate's decision, we conclude that the trial court abused its discretion when it determined that Mr. Pauley's financial condition was voluntary and therefore did not warrant consideration of modification of his spousal support. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I
Mr. Pauley and Mrs. Pauley were divorced in 1984. Mr. Pauley was required to pay $300 a week alimony to Mrs. Pauley under the terms of the divorce decree:
 15. ALIMONY — The husband shall pay as and for permanent alimony the amount of $300.00 a week beginning on the 29th day of December, 1984, and continuing each and every week thereafter until further Order of the Court. Said alimony shall terminate upon the death, remarriage, or cohabitation of the wife with a non-relative male. The husband, upon request from the wife, on an annual basis, shall provide a full disclosure of the financial statements, balance sheets, and corporate income tax returns of the Pauley Construction Company at the close of the financial year of said Pauley Construction Company, as well as individual income tax returns and W-2 forms of the husband. The wife, upon request of the husband, shall provide copies of her W-2 forms and all of her tax returns at the time of the filing of same. The continuing obligation of disclosure reflects the intention of the parties to increase or decrease the alimony payments based on material changes of circumstances and/or financial condition of either or both the husband and wife.
In 1996, Mr. Pauley stopped making timely payments. His arrears coincided with the bankruptcy of his construction company, Pauley Construction Company. In November, 2000, Mrs. Pauley filed a motion for contempt, and the next month Mr. Pauley filed a motion to terminate or to modify his support obligations.
After an evidentiary hearing, the Magistrate found "that the claimed inability to pay is self-imposed. * * * [t]he magistrate is not convinced that [Mr. Pauley's] financial conditions were either involuntary or sufficiently drastic to render him incapable of paying support especially with [Mr. Pauley] failing to submit any documentation to adequately support his reduction in income and claimed expenses." Thus, Mr. Pauley's motion to terminate or modify his support obligations was denied, and he was found to be in contempt of court for failure to pay support to Mrs. Pauley.
Mr. Pauley objected to this decision. Relevant to this appeal, he argued that his current financial condition was involuntary and constituted a substantial change requiring a consideration of modification or termination of his support obligations under R.C. 3105.18.
In its decision overruling Mr. Pauley's objections, after laying out the applicable law pertaining to modification of spousal support, the trial court held as follows:
 A de novo review of the evidence presented in this case suggests that the [Mr. Pauley] did not sustain his burden of proof that his current financial situation was not brought on by his own actions. Clearly, it could be argued that no person who encounters financial difficulties does so voluntarily, however, the evidence in this case suggests that [Mr. Pauley's] financial difficulties were, in fact, brought on by his own conscious choices and business decisions. These were not decisions in which [Mrs. Pauley] participated in and equity would dictate that the adverse consequences of [Mr. Pauley's] decisions should not be assessed to [Mrs. Pauley] to the extent that it affects her receipt of spousal support. In consideration of the foregoing, the Court finds that [Mr. Pauley's] Objection in this regard is not well taken.
From the order of the trial court denying his request to terminate or modify his support obligations, Mr. Pauley appeals.
 II
Mr. Pauley's sole assignment of error is as follows:
 THE TRIAL COURT ERRED BY FAILING TO MAKE A "DE NOVO" REVIEW OF THE MAGISTRATE'S DECISION AND BY FAILING TO PROPERLY APPLY THE EVIDENCE PRESENTED TO THE APPLICABLE LAW
Mr. Pauley claims that the trial court failed to conduct a de novo
review of the magistrate's decision, as required by Civ.R. 53, but merely rubber-stamped the magistrate's determination that the demise of Mr. Pauley's business was voluntary and did not warrant a possible basis for modification of his spousal support obligation.
We have previously recognized that:
 Civ.R. 53(E)(3)(b) contemplates a de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function.
Knauer v. Keener (2001), 143 Ohio App.3d 789, 793. Accordingly, a trial court may not "merely rubber-stamp" a magistrate's decision.Roach v. Roach, (1992), 79 Ohio App.3d 194, 207.
Contrary to Mr. Pauley's assertions, however, the trial court expressly stated:
 This Court has reviewed all prior pleadings filed in the within matter, including the Defendant's Motion filed November 7, 2000 and the Plaintiff's Motion filed November 22, 2000. The Court has also reviewed all prior Orders issued by this Court, including the Final Divorce Decree with the accompanying Separation Agreement which was filed December 21, 1984. The Court has also considered statements made by each of the respective parties and the Court has reviewed the supplemental memorandum submitted on behalf of the Plaintiff herein on April 25, 2001. The Court has also reviewed the transcript of the proceedings which took place before the Magistrate on January 25, 2001.
* * *
 Accordingly, in the case at hand, this Court will not defer to the Magistrate while exercising its current de novo review, however, after conducting a proper independent analysis of all issues, this Court will adopt the Magistrate's Decision. . . .
(Emphasis in original.) Thus, absent anything in the record to contradict the trial court's statement that it complied with its duty of independent review, we must presume that it complied with its duty under Civ.R. 53.
Mr. Pauley argues, also, that the trial court abused its discretion when it found that the economic downturn in his solely owned business was voluntary, and therefore could not justify modification of his support obligations.
A trial court may modify a spousal support order when there has been a substantial change of circumstances. Joseph v. Joseph (1997),122 Ohio App.3d 734, 736. A substantial change in circumstances includes any involuntary decrease in the party's wages or salary not contemplated at the time of the order. R.C. 3105.18. The party seeking a modification must demonstrate a substantial change in circumstances under R.C. 3105.18.Joseph, supra. If the party meets that burden, then the court must determine whether the existing obligation should be modified under R.C.3105.18(C). Id. A modification may result in an increase, decrease, or termination of support. Id. Absent an abuse of discretion, a trial court's determination whether there has been a change of circumstances sufficient to warrant a termination or modification will not be reversed. Id.
The controversy in this case centers around the reduction of Mr. Pauley's salary brought about by the bankruptcy of Pauley Construction Company, his solely owned business. During the evidentiary hearing, Mr. Pauley testified that he stopped making timely support payments after the demise of his company. As to the company's failure, he stated:
 Well, it's a long story but it basically involved trust. We trusted some people and these people stuck me with some really bad jobs in '96. It started in '96. We wrestled with the problem all through '96 and in October of '96 it died basically.
Q. There is actually a filing in the bankruptcy Court [sic]?
 A. [Mr. Pauley] And then we filed bankruptcy with Pauley Construction in January of 1997.
 Q. And the corporation was liquidated and essentially there was no distribution to the unsecured creditors?
A. No.
 Q. And as a result of being president of Pauley Construction had you become personally obligated on any of the obligations of Pauley Construction?
 A. Yes, I have. I have become obligated for all the bank debt because of the personal guarantees and there were some contracts with various suppliers and subcontractors that have personal guarantees attached to them and I've become liable for those and have been paying those off slowly.
T. 29-30.
The court concluded that Mr. Pauley's decrease in income was voluntary, relying upon the magistrate's citation to Haynie v. Haynie
(1984), 19 Ohio App.3d 288, and Shanley v. Shanley (1989),46 Ohio App.3d 100. We disagree. In our view, the bankruptcy of an obligor spouse's company in situations similar to those presented here constitutes a significant change of circumstances that may require adjustment of support obligations. In re Marriage of Izzo, (Ill.App. 1994), 637 N.E.2d 723. See also Deaton v. Deaton (La.App. 1980),393 So.2d 408, 409 (husband's uncontroverted evidence of personal and corporate bankruptcy along with other factors warranted reduction in support obligations), Scheible, Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start (1991), 69 N.C.L.Rev. 577.
The trial court relied upon Haynie and Shanley, supra, for its conclusion that Mr. Pauley's reversal of fortune was voluntary. Both cases are distinguishable. In Haynie, a physician quit a job where he earned a large salary to open a medical practice. His decision was properly considered a voluntary reduction of income not warranting a decrease of support because he was simply forfeiting short-term gains for longer-term ones. Unlike Haynie, however, Mr. Pauley was struggling to stay above water. He did not voluntarily decrease his income by changing jobs and work environments. Due to decisions that, in the light of twenty-twenty hindsight, have turned out badly, not as the result of a planned short-term reduction in income, Mr. Pauley's income is greatly reduced and is not likely to increase in the near future.
In Shanley, supra, an unemployed sportscaster moved to California and proceeded to purchase a $435,000 house and a Mercedes shortly before informing his ex-wife that he would no longer be able to meet his support obligations. Again, the trial court correctly concluded that an individual's decision to increase his material lifestyle, resulting in increased expenses, does not warrant a reduction of his support obligations. As in Shanley, Mr. Pauley incurred additional debt (as a personal guarantor of loans and contracts for Pauley Construction Company). However, we fail to see the similarity between an individual who uses debt to increase his material possessions and one who incurs additional debt to secure the very business income that is being used to fulfill his obligations. There is no indication in this record that Mr. Pauley was living a life of excess at the expense of Ms. Pauley's financial security.
A much better analogy can be drawn from In re Marriage of Izzo, supra. In that case, the husband earned approximately $52,000 a year as president of his company, Edit Chicago, Inc. He fulfilled his support obligations and maintained health insurance for his former spouse out of this income. Eventually, the company had to be sold in a bankruptcy proceeding. Consequently, he could no longer set his own salary; thus, his income was reduced by 25%. The appellate court reversed the trial court and concluded that "[s]urely a reduction of income such as this is [a] type of substantial change in circumstances. . . . and thus it [was] error for the trial court's [sic] to decline to modify the maintenance award." Likewise, Mr. Pauley paid support and maintained health insurance for Mrs. Pauley out of the earnings he received from Pauley Construction Company. When the company went bankrupt, he could no longer set his own salary. Mr. Pauley's income was greatly reduced. He now works as a general laborer. Therefore, we conclude that his reduction of income is an involuntary substantial change of circumstances.
Where an obligor spouse who is the owner of a business makes business decisions in bad faith, with the intention of sabotaging the business, thereby undermining his ability to pay spousal support, or where he makes business decisions in reckless disregard of their likely impact on his ability to pay spousal support, it is appropriate to find that the diminution of his business should be disregarded as a basis for modifying his support obligation, since that diminution would then be the result of the obligor spouse's conscious decision either to adversely impact the obligee spouse's financial security, or to disregard a likely adverse impact. We see no reason to regard a business decision taken in good faith that, in retrospect, turns out to have been unfortunate, as constituting a voluntary diminution in the obligor spouse's income.
There is nothing in the record to suggest that Mr. Pauley consciously intended to diminish his ability to provide spousal support, or consciously decided to disregard the potential adverse impact of his acts upon that ability. He had been paying spousal support for over ten years, suggesting that he was not yielding to the vengeful urge of a divorcing spouse to shoot himself in the foot, financially, to punish the other spouse.
The reasoning of the trial court was that Mr. Pauley's "financial difficulties were, in fact, brought on by his own conscious choices and business decisions. These were not decisions in which [Mrs. Pauley] participated * * *." Ultimately, of course, each individual's success or failure in life, financially as in other respects, is the result of his or her conscious choices and decisions. It argues too much to argue that decisions made in good faith should be disregarded. The week before this motion was decided, Ms. Pauley could have purchased a ticket with the winning numbers in the Ohio lottery. She either decided not to, or decided to purchase a ticket with different numbers. That was her choice. Mr. Pauley presumably had no part in it. Had she made the choice, optimal in the light of hindsight, to purchase a ticket with the numbers that turned out to be the winning numbers, she would not need spousal support, but that doesn't allow us to disregard the choice she made.
Mr. Pauley's sole assignment of error is sustained.
 III
Mr. Pauley's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
GRADY and POWELL, JJ., concur.
(Honorable Stephen W. Powell of the Court of Appeals, Twelfth Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)