OPINION
Defendant-Appellant David C. Partridge appeals the Greene County Domestic Relations Court's judgment and final decree of divorce, alleging six assignments of error. Plaintiff-Appellee Julie L. Partridge has responded and filed a cross-appeal asserting one assignment of error.
Julie and David were married on September 19, 1992. Two children were born as issue of the marriage, David B. Partridge, born June 29, 1993, and Emillie M. Partridge, born April 5, 1995.
On May 6, 1996, Julie moved out of the marital residence with the children and filed a complaint for divorce, requesting temporary and permanent custody of the children. David filed an answer and counterclaim, requesting temporary and permanent custody, or in the alternative, shared parenting. Six days of testimony were heard by the magistrate prior to the issuance of the final judgment and decree of divorce on September 17, 1997. Due to the large amount of testimony, for purposes of this opinion the specific facts will be discussed within the assignments of error. In the decree, the magistrate named Julie as the primary residential parent of the minor children, established child support and spousal support, granted liberal visitation rights to David using Option II of the Greene County standard order of visitation, and encouraged the parties to permit David to exercise additional visitation. The magistrate also valued the marital residence at $160,000, and ordered David to pay Julie $24,077.25 for her share of the equity in the marital property.
David filed his objections to the magistrate's order on October 1, 1997, contesting the issues of custody and visitation of the children, child support, spousal support, whether the marital residence was marital property, and the valuation of the residence. The trial judge issued his decision on March 20, 1998, overruling all of David's objections except his regarding the appraisal amount of the residence.
David filed a motion to set aside the final judgment and decree of divorce on August 12, 1998, requesting that the court vacate the decree based on newly discovered evidence, a questionnaire completed by Julie while she was at the Xenia Women's Recovery Center in 1991. The magistrate issued his decision overruling said motion on October 28, 1998, finding that the evidence which David claimed was "newly discovered" had been under his possession and control for two years, and that similar evidence had been before the court during the trial. In response, David filed objections to the magistrate's decision on November 25, 1998, however the trial court overruled these objections on January 20, 1999.
David now timely appeals the trial court's decisions, asserting six assignments of error. Julie responded to these assignments of error, and also properly asserts one assignment of error on cross-appeal.
I.
 The trial court erred in allowing a magistrate to hear the case, without an order of reference, over objection of the Defendant-Appellant.
In his first assignment of error, David argues that it was error for the magistrate to hear this case because he properly objected to the magistrate's appointment at trial, and no order of reference existed to give authority to the magistrate to hear the matter. Additionally, David argues that consent is necessary in all magistrate appointments.
Civ.R. 53 governs the appointment of a magistrate to hear certain cases. Contrary to David's argument, under Civ.R. 53(C)(1)(a)(ii), a court may, by order, refer a non-jury trial to a magistrate without the consent of the parties. Consent is necessary only in cases of jury trials. Civ.R. 53(C)(1)(a)(iii). See, also, Hartt v. Munobe (1993), 67 Ohio St.3d 3. Furthermore, the Greene County Common Pleas Court, Domestic Relations Division, implemented Rule 7.01, which states:
 Except for Motions for New Trial and Motions to Vacate Judgment, all actions may be heard by a Referee of the Greene County Court of Common Pleas, Domestic Relations Division. The proceedings conducted by said Referee shall be governed by Civil Rule 53.
We find that this rule acts as a standing order of reference pursuant to Civ.R. 53(C)(1)(a)(ii), and David's consent was not necessary to give the magistrate the authority to preside over the divorce proceedings. David's first assignment of error is overruled.
 II., Defendant-Appellant did not receive a fair and equitable opportunity for shared parenting of his children due to ineffective assistance of counsel at this trial.
David asserts that he did not receive effective assistance of counsel because his trial attorney did not pursue shared parenting, despite his indicating a preference for shared parenting continually throughout the divorce proceedings. We find this argument meritless.
The right to effective assistance of counsel in a criminal proceeding is provided by the Sixth Amendment to the United States Constitution. Strickland v. Washington (1984), 466 U.S. 668, 686. Conversely, in a civil case between individual litigants, there is no constitutional right to effective assistance of counsel, but instead "an injured party's remedy for inefficient legal counsel is, generally, against the attorney in a suit for malpractice."Musa v. Gillette Communications of Ohio, Inc. (1994), 94 Ohio App.3d 529,537, citing GTE Automatic Elec. Inc. v. ARC Industries
(1976), 47 Ohio St.2d 146. See, also, Roth v. Roth (1989),65 Ohio App.3d 768, 776. Thus, as this is a civil matter between David and Julie, there is no remedy for David's claim of ineffective assistance of counsel on appeal.
Additionally, while it is true that in his answer and counterclaim, filed on May 10, 1996, David did request shared parenting as an alternative to temporary and permanent custody of both of his children, the record does not reflect that he expressed this desire throughout the proceedings. To the contrary, in David's testimony at trial he repeatedly stated that he had "grave areas of concern" regarding the children's welfare if left in Julie's custody and Julie's ability to be the residential parent, therefore he felt that the children would be better off in his care.
Accordingly, we find David's second assignment of error not well taken.
III.
 The trial court erred in denying Defendant-Appellant the right to obtain psychological and medical evidence relating to the Plaintiff-Appellee.
In David's third assignment of error, he alleges error when the trial court refused to allow him discovery of Julie's pre-marital medical records for custody purposes. David filed a motion seeking medical releases from 1991 for Julie's medical records from Eastway, Miami Valley Hospital, and Xenia Women's Recovery Center. The trial court did not file a written decision on David's motion, however testimony at trial indicates that the trial court orally decided the motion at the September 30, 1996 pretrial conference. At the conference, the trial court had allowed Dr. John P. Layh, Ph.D, the court-appointed psychologist, access to the records if he felt them necessary for his evaluation of the parties for custody purposes. The following is an excerpt of this testimony:
 Mr. Hruska: In fact, Your Honor, I'm making an objection. Judge Shattuck, that was exactly Judge Shattuck's order in the pretrial, that if the doctor wanted the records, he could obtain those records.
 The Court: I have reviewed the file and Judge Shattuck had made an order in regard to that issue.
 Mr. Kirkland: He has made an order. He's made me a note.
The Court: He has made a finding as to that issue.
* * *
 Mr. Hruska: Your Honor, I would like to add that I have not seen an entry. I mean I've not received one. However, when we were in chambers at the pretrial, that was the ruling that he gave. Whether it was reduced to writing, I'm not sure, but that's the oral ruling that he gave.
 The Court: I thought I had seen something in the file regarding that and if it is not an entry then I stand corrected.
By Mr. Kirkland [resuming cross-examination of Dr. Layh]:
 Q. Okay. Doctor, would it change your opinion if the request for the medical records was for the fact of in-camera review by the Court as opposed to the public as you said, would that be a concern to you in terms of the issue of forthcoming?
 A. Umm, I'm not, I'm not sure that it would. I think, as I said before, it seems to be dated history that doesn't have much relevance to what's going on these days.
(Tr. 179-181)
In reviewing the record, David did not file a motion to reconsider or otherwise preserve this issue for appeal following the court's decision at the pretrial conference. Moreover, David did not raise the issue in his objections to the magistrate's decision. Civ.R. 53(E)(3)(b) precludes a party from assigning as error any conclusion of law absent an objection. Stafinsky v.Stafinsky (1996), 116 Ohio App.3d 781, 785, fn. 3. A party's failure to object to a matter contained in a magistrate's decision is considered a waiver of the right to argue said issue on appeal.Zumock v. Zumock (Sept. 26, 1997), Portage App. No. 96-P-0180, unreported. Since David did not assert this issue in his objections to the magistrate's decision, he may not assert this as an assignment of error at this time. Accordingly, all but plain error has been waived. Thomas v. Thomas (Oct. 9, 1998), Greene App. No. 98 CA 59, unreported.
"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, paragraph one of the syllabus. (Citations omitted). We find no indication of plain error in the instant case based on Dr. Layh's testimony at trial that having these pre-marital medical records would not have altered his recommendation of Julie as the residential parent.
David's third assignment of error is overruled.
 IV. The trial court's decision to award custody to the Appellee and grant the Appellant only the standard order of visitation was against the manifest weight of the evidence.
David argues that the court's decision to name Julie as the principal residential parent, giving David the standard order of visitation, was against the manifest weight of the evidence and was an abuse of discretion. David asserts as error the trial court's reliance upon the testimony of Dr. Layh, who made his recommendation without reviewing Julie's pre-marital medical history, and who recommended that Julie be named as the principal residential parent of the children due to their "tender years." Additionally, David contends that the court should have taken action to order one of the parties to submit a shared parenting plan, and that the court erred in not setting out a specific amount of additional visitation for David when it recommended that he be permitted liberal visitation outside of the standard order. In reviewing the complete record, we disagree with David's interpretation of the facts and find no abuse of discretion as the decision was not against the manifest weight of the evidence.
The trial court has broad discretion in custody disputes, and the reviewing court's authority to reverse the trial court is limited to situations where the trial court's decision is against the manifest weight of the evidence. Roach v. Roach (1992),79 Ohio App.3d 194, 208; Amiri v. Amiri (Dec. 31, 1998), Montgomery App. No. 17276, unreported; Bell v. Bell (June 5, 1998), Clark App. No. 97-CA-105, unreported. In reviewing an argument based on the weight of the evidence, the appellate court cannot reverse judgments supported by some competent, credible evidence going to all the essential elements of the case. Bawidamann v. Bawidamann
(1989), 63 Ohio App.3d 691, 695. The Ohio Supreme Court has recognized that the deference to be accorded to a trial court's assessment of the credibility of evidence in child custody disputes is especially great, because the credibility issue is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419.
R.C. § 3109.04(A) states that in a divorce action, the trial court "shall allocate the rights and responsibilities for the care of the minor children of the marriage." R.C. § 3109.04(A). In allocating parental rights and responsibilities, the trial court must base its decision on the child's best interest. R.C. § 3109.04(B)(1). This includes, but does not limit the trial court, to the following factors:
(a) The wishes of the child's parents regarding his care;
(b) * * * [T]he child's wishes;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all the persons involved in the situation;
 (f) The parent [who is] more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including arrearages * * *;
 (h) Whether either parent previously has been convicted or pleaded guilty to any criminal offense involving * * * [the] child * * *;
 (i) Whether the residential parent has continuously and willfully denied the other parent * * * visitation * * *;
 (j) Whether either parent has established a residence or is planning to establish a residence outside the state.
R.C. § 3109.04(F)(1)(a)-(j). In considering these factors, it is the role of the trial court to resolve any factual disputes and weigh the testimony and credibility of the witnesses. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23.
In the instant case, Dr. Layh provided extensive testimony on this issue of custody, based on the psychological evaluations he performed upon Julie and David. Dr. Layh testified that both parties were former alcoholics, and Julie was a former drug user who also had some additional mental health issues. He stated that Julie had been very candid with him regarding her past, and she was not defensive during her evaluation. Dr. Layh stated that he had not pursued Julie's past medical records because he believed the information from 1991 was "dated" and would not be relevant to the divorce proceedings. He also noted specifically that Julie was not at risk of relapsing or regressing any more than David. Additionally, both parties at the time of trial were on anti-depressants for depression and anxiety relating to their marital problems and the divorce.
Dr. Layh testified that he had no concerns regarding Julie's ability to parent her children. He recommended that Julie be named as the principal residential parent of the children, but that David be allowed frequent and liberal visitation. Dr. Layh testified that part of his reason for recommending that Julie be the residential parent was because the children were young and he believed they should reside with their mother. In support of this statement, Dr. Layh stated that Julie had a flexible work schedule, the children had regular contact with Julie's family as the main daycare providers, and that Julie had served as the primary caretaker of the children.
During her testimony, Julie acknowledged that she had had substance abuse issues, and she addressed her prior mental health problems. She described in detail her drug and alcohol treatment, beginning with admitting herself into the Miami Valley Hospital's Turning Point program on April 15, 1991 for eleven days at their inpatient drug treatment program. Julie then went to the Xenia Women's Recovery Center, a half-way house, for ninety days. Julie joined Alcoholics Anonymous ("AA") at that time, and had continued attending AA meetings at least once or twice a week. It was through AA that Julie and David had met.
Julie testified that during the marriage, she was the primary caretaker of the children while David worked and traveled. Julie stated that often when David returned home from work he would be tired and needed some time to unwind before spending time with the children, leaving her to care for the children.
Julie testified that she had been working twenty hours a week for her father at GF Tool Co., and that her schedule was very flexible, and it was easy for her to take time off from work if the children need special attention or care. While Julie worked, the children would be cared for by a family friend and by Julie's mother and sister. Julie stated that she believed it would be in the children's best interest for them to spend as much time as possible with both parents.
Julie's mother, Millie Gohman, testified on behalf of Julie. Ms. Gohman stated that she had spent a lot of time with Julie and the children, and that she had no concerns about Julie becoming the children's residential parent. She stated that in her opinion, Julie was "a wonderful mother" and Julie had a great relationship with the children. Additionally, she had no concerns about Julie regressing or relapsing into her past behaviors of alcohol or substance abuse.
David testified that he had been involved with both children since their births. David stated that he would be a better residential parent because he could provide the children with stability, having continued to live in the marital residence, which was in a better socioeconomic neighborhood then Julie's apartment. David expressed concerns about Julie being the residential parent because she had not been responsible, and he felt she would relapse into her past behaviors of substance and alcohol abuse. David stated that if he was named residential parent that he would hire a nanny to be with the children, in an effort to establish some consistency in the children's lives. Amidst his concerns that Julie would not be a responsible parent, David testified that during the marriage he once wrote "You use no fucking common sense" on the walls of the kitchen with shoe polish, in an effort to "get it across" to Julie the way to make a marriage work. Finally, David stated that Julie had abided by the court's most liberal visitation policy under Option II of the standard order of visitation, and that she had allowed him additional time to visit with his children.
In evaluating the record before us, we find that there is substantial competent and credible evidence to support the magistrate and trial court's decision naming Julie as the principal residential parent. We find that the trial court did consider the relevant factors under R.C. § 3109.04(F) and did not abuse its discretion when it found that the children's best interests would be served by naming Julie as the residential parent. We find that the trial court did not abuse its discretion in relying on Dr. Layh's testimony, and that his testimony contained a well-based recommendation, going beyond recommending placement of the children with Julie only because of their "tender years." Finally, as all parties testified that David was receiving liberal visitation above and beyond that ordered under Option II of the standard order, we find that the trial court did not abuse its discretion by not setting specific parameters when it encouraged "liberal visitation" for David. Accordingly, David's fourth assignment of error is overruled.
 V. The trial court erred in overruling Defendant-Appellant's motion under Civil Rule 60(B) relating to newly discovered evidence.
In his fifth assignment of error, David asserts that the trial court erred in overruling his motion to set aside the final judgment and decree of divorce based on the fact that he discovered an old completed questionnaire from the Women's Recovery Center in a box in his garage which directly contradicted Julie's testimony, and which would have affected the court's decision relating to custody. David argues that he met the parameters for a claim under Civ.R. 60(B), and that it was error for the magistrate to overrule his motion because he did not know that Julie had not moved all of her belongings out of the marital residence.
It is within the discretion of the trial court to decide whether or not to grant a party's Civ.R. 60(B) motion to set aside a judgment. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17,20. Thus, absent a clear showing of an abuse of discretion, a trial court's decision granting or denying a Civ.R. 60(B) motion will not be disturbed on appeal. GTE Automatic Electric, Inc. v.ARC Industries (1976), 47 Ohio St.2d 146, 148. Civ.R. 60(B) reads as follows:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); * * * The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.
A party bringing a motion under Civ.R. 60(B) may prevail only upon demonstrating the following three requirements: (1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. GTE AutomaticElectric, Inc., supra, paragraph two of the syllabus.
In his October 28, 1998 decision, the magistrate noted that the parties had stipulated that David had exclusive control of the marital residence since Julie moved out on May 6, 1996. It was further stipulated that David found Julie's completed questionnaire from the Women's Recovery Center in a box in the house prior to the filing of his August 12, 1998 Civ.R. 60(B) motion. The magistrate found no reason to believe that the box containing the exhibit had been anywhere else but in David's house and under David's exclusive care, custody and control since May 6, 1996. Additionally, in his decision denying David's motion, the magistrate found the following:
 The Defendant, being an engineer by profession, presented himself as a meticulous individual and attentive to detail. He had supplied numerous documents to his counsel for use at trial which he kept in his home. Furthermore, many of the documents at his home regarding his divorce case were kept in boxes and the Defendant, by his own testimony, admitted that he had gone through these boxes and could go through them again if necessary (T-407, 408).
* * *
 It is the opinion of this Court that Defendant had ample opportunity and time to discover this new evidence if he had exercised due diligence in carefully examining the contests (sic) of his home, which by his testimony "was basically empty" (T-408) after Plaintiff left on May 6, 1996, and over which he had exclusive control throughout the nearly two year bitter divorce proceeding between the parties before a Final Judgment and Defendant's Objections to the Magistrate's Report was filed. Furthermore, the evidence which Defendant presents as "newly discovered evidence" could hardly be classified as such since the contents of the Women's Recovery Center questionnaire and responses contained therein by the Plaintiff were already before the Court in sufficient detail through the testimony of Plaintiff, Defendant, and the mother of the Plaintiff.
Having reviewed the record, we hereby adopt the decision of the magistrate and find that David's motion for relief from judgment did not fulfill the requirements under Civ.R. 60(B)(2). Based on the magistrate's decision, the evidence David discovered was not "newly discovered which by due diligence could not have been discovered in time." The trial court therefore did not abuse its discretion by denying David's motion for relief from judgment and affirming the magistrate's decision. As such, David's fifth assignment of error is overruled.
 IV. The trial court erred in granting the Plaintiff-Appellee an interest in the marital residence despite her waiver of dower rights and the fact that she did not contribute to the financial support of the household.
In his final assignment of error, David claims that the trial court erred in granting Julie equity in the marital residence when (1) she did not contribute to the appreciation of the marital residence purchased with a down payment by David of pre-marital assets, and (2) she waived her dower rights to the marital residence. In its decision, the trial court affirmed the holding of the magistrate and found that Julie was entitled to one-half of the equity in the marital property after deducting the $12,828 down payment that came from David's separate, pre-marital money, and after crediting Julie with $1,200 worth of improvements she made to the marital residence from her separate, pre-marital assets. After reviewing the record, we find that the trial court did not abuse its discretion in its calculations, and that Julie was entitled to that portion of the equity in the marital residence.
It is within the trial court's discretion to determine an equitable division of the property in a divorce case. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131; Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. Such decisions will not be disturbed absent a showing that the trial court abused its discretion.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94. An abuse of discretion involves "more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
It is the trial court's duty to determine in a divorce proceeding what constitutes marital property and what constitutes separate property. R.C. § 3105.171(B). Pursuant to R.C. § 3105.171(A)(3)(a)(I), property which has been acquired during the marriage is considered to be marital property. Property brought into the marriage by an individual is considered non-marital and separate property and, therefore, is generally excluded from the division of the couple's property. R.C. § 3105.171(A)(6)(a)(ii);Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 413, fn. 27, overruled on other grounds by Cherry, supra. Additionally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. § 3105.171(H).
To begin, in his original objections filed on October 1, 1997, David did not assert as error the trial court's decision granting any equity interest in the marital residence based on Julie's waiver of her dower rights. Accordingly, under Civ.R. 53(E)(3)(b) and Stafinsky, supra, David has waived the right to argue this issue on appeal. However, if we were to address this issue, we would determine that the trial court did not abuse its discretion in granting equity to Julie.
The Tenth District has held that the burden of challenging the effectiveness of a deed rests upon the challenger:
 the burden is upon the person challenging the effectiveness of a deed executed in accordance with statutory requirements to accomplish the conveyance set forth therein. * * * [T]he burden was upon plaintiff to demonstrate that in some fashion the deed was not intended as an outright complete transfer of all of plaintiff's interest in the property to his wife, defendant, in accordance with the express terms of the deed.
Pettry v. Pettry (1991), 81 Ohio App.3d 30, 34. In the case before us, the trial court was presented with ample evidence upon which to find that the house was purchased as marital property, remained marital property, and that there was no intent to transfer outright Julie's interest in the property to David. Evidence showed that the parties married in September of 1992 and purchased the house in 1993. No evidence exists supporting the premise that Julie actually intended to convey her interest in the residence to David as separate property. It was undisputed that Julie left all financial decisions to David, and that her name was not on the mortgage because of her history of credit problems. In fact, David testified that the bank advised them to keep Julie's name off the mortgage in an effort to ensure that they would qualify for the mortgage. Julie testified that she was not aware of signing away any quitclaim of dower rights, and that it was not her intent to sign away any rights. Julie also testified that she did not even know what the term "dower rights" meant. Based on this evidence, we find that the record supports the finding that the house was marital property, thus the equity in the marital residence, including the appreciation, should be equitably divided between the parties in accordance with the trial court's ruling.
David's sixth and final assignment of error is overruled.
In her cross-appeal, Julie raises only one assignment of error:
 I. The trial court erred in making its determination of the fair market value of the marital property.
Julie asserts that the trial court erred in overruling the magistrate's decision in valuing the marital property at the first appraisal done at $160,000 instead of the second valuation of $135,000.
In Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295, the Supreme Court stated:
 [i]n reviewing the equity of a division of property, one of the basic guidelines an appellate court is bound to follow is that the trial court's judgment cannot be disturbed on appeal absent a showing that the common pleas court abused its discretion in formulating its division of the marital assets and liabilities of the parties.
An abuse of discretion implies more than merely an error of law or judgment, but instead the court's attitude must be unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In the instant case, the magistrate held that the first appraisal of $160,000 was the correct and logical value of the marital residence. However, the trial court overruled the magistrate's decision, finding instead that the second appraisal was more accurate. The trial court noted that the Greene County Auditor had listed the selling price of the marital residence in 1993 incorrectly at $160,000 instead of the actual selling price of $120,000. Based on the correct selling price, the appraisal was altered to reflect a valuation of $135,000 for the marital residence. The trial court stated that "[i]t is unrealistic to expect the marital residence would appreciate more than 33.3%, without any major improvement to the property, within a period of three years."
In reviewing the record on appeal, we cannot say that the trial court abused its discretion in valuating the property at the second appraisal amount of $135,000. Timothy Kennedy, the appraiser who testified at trial, noted that prior purchase price does factor into the appraisal amount. Kennedy testified that if this piece of property sold for $120,000 in 1993, and three years later the market conditions were similar, with no major improvements done to the property, it would not follow that the piece of property would be worth $30,000 to $40,000 more. Additionally, Kennedy stated that he used two different sets of comparable pieces of property when valuing the residence in this case, and he was much more comfortable with the second set of comparables, resulting in a more accurate valuation of $135,000.
Based on this information, we cannot at this time state that the trial court abused its discretion. As such, Julie's assignment of error is overruled.
The trial court's judgment is affirmed.
GRADY, P.J., and BROGAN, J., concur.
Copies mailed to:
Gary M. Hruska, Michael A. Sheets, Hon. Judson L. Shattuck, Jr.