[Cite as *Coliadis v. Holko Enercon, Inc.*, 2016-Ohio-8522.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


STEVE COLIADIS, f.d.b.a.        :        **O P I N I O N**
ROYAL LIGHTING,
                               :
        Plaintiff-Appellant,           **CASE NO.  2016-T-0044**
                               :
    - vs -
                               :
HOLKO ENERCON, INC.,
                               :
        Defendant-Appellee.
                               :


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2014 CV 00427.

Judgment: Affirmed.


*Michael D. Rossi,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*Thomas E. Schubert,* 138 East Market Street, Warren, OH 44481 (For Defendant-Appellee).


DIANE V. GRENDELL, J.

{¶1}    Plaintiff-appellant, Steve Coliadis, formerly doing business as Royal Lighting, appeals from the Judgment Entry of the Trumbull County Court of Common Pleas, ordering judgment in favor of defendant-appellee, Holko Enercon, on Coliadis' claim for breach of contract.  The issue to be determined in this case is whether a breach of contract occurs when a roof is installed that the purchaser believes should have prevented all moisture from occurring inside of a building and there is conflicting

testimony about the cause of the moisture. For the following reasons, we affirm the decision of the lower court.

{¶2} On February 26, 2014, Coliadis filed a Complaint in the Trumbull County Court of Common Pleas. It stated that he paid $39,800 to have a roof installed by Holko, which "failed to substantially perform its own obligations under the contract, resulting in a failure of consideration and thereby excusing Plaintiff's performance thereof." Coliadis requested a judgment "declaring a rescission of the parties' contract."

{¶3} An attached contract, dated April 2, 2004, referred to the job as "re-roofing the Royal Lighting building." Specifically, it stated that a roof would be installed over the existing "prepared roof surface," and gave details relating to the installation and flashing. It also stated: "Entire roof system installed to current GAF [the roofing manufacturer] specifications for their 15 Year Material & Labor Warranty."

{¶4} Holko filed an Answer on May 21, 2014.

{¶5} On May 5, 2015, Holko filed a Trial Memorandum, in which it moved the court to dismiss the Complaint. It argued that, since Coliadis had replaced the roof in 2011, there was a substantial change in the nature of the contract, rescission was not a proper remedy, and Coliadis failed to seek rescission in a reasonable timeframe.

{¶6} A trial was held on May 5, 2015, before a magistrate. The following testimony was presented:

{¶7} In 2004, Holko placed a new roof over the existing one on Coliadis' business, Royal Lighting. Coliadis indicated that, after this roofing work in 2004, he left the country for a few months and returned to find water on the carpets and moisture

2

within the building. He believed that the water was leaking from the ceiling area, where there was mold.

{¶8} Coliadis testified that he had no problem with condensation or other water in the building prior to 2004. Coliadis contacted Holko several times. Holko did not believe there was an issue with the roof, but installed additional vents between 2007 and 2009. Holko suggested several other problems, such as foundation issues, that may be the cause of the moisture. Coliadis had work performed based on these suggestions that did not remedy the problem.

{¶9} In 2011, Coliadis had a new roof installed. Since then, he has not experienced problems with mold or condensation. He believed the roof installed by Holko was the problem, since it went over the pre-existing roof and could not "breathe." Coliadis testified that Roth Brothers Roofing said water got trapped between the two roofs, causing the leaking/water problems. No one from that company testified. Coliadis did not remember making a statement, documented in a GAF inspection report, that "the building was not venting properly after [the] roof was installed."

{¶10} George Holko, part-owner of Holko Enercon, looked at Coliadis' roof in 2004, at which time he observed some water damage on the ceiling. He was asked by Coliadis for a quote to reflash parapet walls on the roof. Holko noted that the roof was old and would likely need to be replaced, and gave Coliadis an estimate for doing a "recover" of the roof, placing a new roof over the existing one.

{¶11} While Coliadis complained about the roof and leaks several times following installation in 2004, Holko and his company found no leaks and he never saw external water coming through the roofing membrane. Holko believed that temperature

3

fluctuations occurring in the building led to any water/moisture problems. He opined that since the building was often left closed for several months at a time during Coliadis' vacations, moisture became trapped inside, causing condensation. This conclusion was based on observations that the heat is not turned on at all times, with Holko once noting the temperature inside was 55 degrees, and utilities such as gas were turned off. When the heat was ultimately turned on, it could have caused sweating at the ceiling/steel deck.

{¶12} GAF also found no leaks in the ceiling after performing roof investigations. GAF suggested Coliadis find a design specialist to attain proper ventilation. Holko had also recommended that Coliadis get ventilation in the building to create air movement.

{¶13} On June 4, 2015, a Magistrate's Decision entered judgment in favor of Coliadis for the return of the contract price, $39,800. The magistrate found that the installation of the roof in 2004 "created a condensation and moisture problem," finding that the building had no issues after the new roof was installed in 2011, that it had a moisture problem between 2004 and 2011, and that a change had occurred between that time period in the building's "heating, air movement or closure" due to the roof installation.

{¶14} Holko filed an Objection to the Magistrate's Decision on June 10, 2015, and a Brief in Support on August 18, 2015. Coliadis filed an opposing Memorandum.

{¶15} On April 20, 2016, the trial court issued a Judgment Entry, finding the objections to the Magistrate's Decision to be well-taken, rejecting the Magistrate's Decision, and entering judgment for Holko. The court found no evidence of a breach of

contract, that the evidence showed Holko installed the roof, and noted Coliadis failed to offer expert testimony to show that the roof was defective so as to constitute a breach.

{¶16} Coliadis timely appeals and raises the following assignment of error:

{¶17} "The trial court erred in rejecting the Magistrate's Decision and entering final judgment for Appellee."

{¶18} "When reviewing an appeal from a trial court's decision to accept or reject a magistrate's decision," this court has consistently held that "an appellate court must determine whether the trial court abused its discretion." *Dudas v. Harmon*, 11th Dist. Lake No. 2015-L-060, 2015-Ohio-5218, ¶ 44; *Wolkoff v. Bloom Bros. Supply*, 11th Dist. Geauga No. 2012-G-3092, 2013-Ohio-2403, ¶ 32. This court has described an abuse of discretion as a judgment "which does not comport with reason or the record," and as one in which the court failed "to exercise sound, reasonable, and legal decision-making." (Citations omitted.) *In re Beynenson*, 11th Dist. Geauga No. 2012-G-3066, 2013-Ohio-341, ¶ 12. The concurring judge, in applying this standard, has previously stated that "[a]lthough appellant challenges the weight of the evidence, our standard of review of a trial court's decision under Civ. R. 53 is limited to a determination of whether the court abused its discretion in adopting the magistrate's decision." *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. Trumbull No. 2010-T-0004, 2010-Ohio-5395, ¶ 17. *Also Hynd v. Roesch*, 11th Dist. Ashtabula No. 2015-A-0063, 2016-Ohio-7143, ¶ 26 ("even if [appellant] had filed a manifest-weight objection and specific objections to the magistrate's decision, her assignment of error would still lack merit," since, "in such circumstances, the standard of review of the trial court's adoption of the magistrate's decision would have been abuse of discretion").

5

{¶19} In order to set forth a cognizable claim for breach of contract, Coliadis "was required to allege the following: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages." *Byers Dipaola Castle, LLC v. Portage Cty. Bd. of Commrs.*, 2015-Ohio-3089, 41 N.E.3d 89, ¶ 23 (11th Dist.). Here, there is no question that there was a contract. The question arises as to whether the completed roofing job complied with the terms of the contract.

{¶20} Coliadis argues that "he wanted and contracted for a dry building" and not "a leakproof roof that would create a much greater moisture/condensation problem inside," arguing that the failure to provide this constituted a material breach of the contract.

{¶21} A review of the contract does not show a promise or agreement to prevent any moisture from developing inside. The contract states that a "roof system" was to be installed "over [the] prepared roof surface," and Coliadis received exactly that. While the installation of a roof over a preexisting one may cause different conditions with moisture inside of the building, it does not mean that Coliadis did not receive the benefit of the bargained-for work that was described in the contract. It is also noteworthy that Coliadis paid Holko $39,800 for this work, while he paid another company $180,426 for the installation of an entirely new roof in 2011. The work performed by Holko would likely have a somewhat different outcome than a removal of the old roof and a new installation, just as repairs may result in a different outcome than a replacement. That the type of roofing job Holko did may necessitate more or different ventilation does not change the fact that this is the type of roofing Coliadis chose to have installed.

6

{¶22} Additionally, the evidence presented by Coliadis, solely his own testimony and exhibits, did not conclusively establish the cause of the condensation/moisture problem. He did not present expert or any other testimony to corroborate his belief that the installation of the roof over a preexisting one created the moisture problems.

{¶23} Holko gave contrasting testimony that provided an alternate cause of the problem. Testimony and reports from both Holko, the installer, and GAF, the manufacturer, established that they found no leaks in the roof. Testimony about the conditions within the building, including a lack of air circulation and varying temperatures, supports the conclusion that ventilation was needed and that the problem was not the result of a breach of contract. This was not refuted by any expert testimony. While Coliadis did testify that he only had these problems when this particular roof was installed, it does not automatically follow that Holko did not provide the contracted for service or breached, as explained above.

{¶24} There is also some merit to the trial court's finding that a claim for a breach of warranty for fitness for a particular purpose could be more appropriate, but this was neither pled by Coliadis, nor argued on appeal. *See* R.C. 1302.28 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is * * * an implied warranty that the goods shall be fit for such purpose.").

{¶25} Coliadis' brief primarily relies upon his contention that this case is similar to *Yurchak v. Jack Boiman Constr. Co.*, 3 Ohio App.3d 15, 443 N.E.2d 526 (1st Dist.1981), which upheld a jury verdict finding that the defendant did not satisfactorily

complete waterproofing of the plaintiff's basement, although the contract provided a ten-year waterproof guaranty. *Yurchak* is distinguishable from the present matter. In *Yurchak*, the plaintiff contracted for waterproofing and the basement was not waterproofed. In the present matter, a contract for reroofing was signed and the service was performed. As noted above, there was testimony, which the court was entitled to believe, that the moisture problems were caused by Coliadis' behavior rather than the roofing job. There was no real question in *Yurchak* that the lack of waterproofing in the basement was caused by failure to provide the contracted-for service, which the court noted was "central to the contract," while a factual dispute is clearly an issue in the present matter. *Id.*

{¶26} It is also important to emphasize that we review the trial court's decision for an abuse of discretion, while giving deference to the findings regarding the weight of the evidence and whether the witness testimony was credible and convincing. *Iacovone v. Selvaggio*, 11th Dist. Lake No. 2014-L-090, 2015-Ohio-1493, ¶ 12; *Carrocce v. Shaffer*, 11th Dist. Trumbull No. 96-T-5521, 1997 Ohio App. LEXIS 4845, 7 (Oct. 31, 1997). Given the competing versions of the cause of the moisture problem, we do not find an abuse of discretion in the court's rejection of the Magistrate's Decision, nor was this contrary to the evidence presented at trial.

{¶27} The sole assignment of error is without merit.

{¶28} For the foregoing reasons, the Judgment Entry of the Trumbull County Court of Common Pleas is affirmed. Costs to be taxed against appellant.


COLLEEN MARY O'TOOLE, J., concurs in judgment only,

8

CYNTHIA WESTCOTT RICE, P.J., concurs in judgment only with a Concurring Opinion.


_____


CYNTHIA WESTCOTT RICE, P.J., concurs in judgment only with a Concurring Opinion.

{¶29} While I agree with the majority's disposition, I do not agree that the proper standard of review is abuse of discretion. In *O'Brien v. The Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, a breach-of-contract case that was decided by the trial court *without* a magistrate, the Tenth District applied the hybrid standard of review. The court stated, "we review the trial court's findings of fact * * * to determine if the findings are supported by competent, credible evidence." *Id.* at ¶10. "If we accept the facts found in the trial court as true, we must then independently determine - - without deference to the trial court's conclusion - - whether those facts satisfy the trial court's legal conclusion." *Id.* at ¶12.

{¶30} More recently, in *Ohio Educ. Ass'n v. Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079, a breach-of-contract case that began *with* a magistrate, the Tenth District likewise applied the hybrid standard of review, as follows:

> "[T]he determination of whether non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law." *Gilbert v. Dept. of Justice*, 334 F.3d 1065, 1071 (Fed.Cir. 2003). Appellate review of a mixed question of law and fact requires an appellate court to accord due deference to a trial court's factual findings if the factual findings are supported by competent, credible evidence, and to independently review whether the trial court properly applied the law to the facts of the case. *O'Brien[, supra,]* at ¶10-12 * * *. *Lopez, supra*, at ¶12.

9

**{¶31}** Here, although the majority concedes factual issues existed, it applies the abuse of discretion standard because the case originated with a magistrate. However, "[a]pplying an abuse of discretion standard of review simply because the case originated with a magistrate seems illogical when we would not apply this same standard of review had the case originated with the trial judge * * *." *Woody v. Woody*, 4th Dist. Athens No. 09CA34, 2010-Ohio-6049, fn. 1. "[I]t is the trial court's decision, not the magistrate's, that an appellate court reviews." *Id.* "We are thus confounded as to why two different standards should apply when reviewing a trial court's judgment depending upon whether it originates with a magistrate or a trial judge." *Id.* The Fourth District said that a judgment, whether it originated with the trial court or a magistrate, should ordinarily be reviewed under the manifest-weight standard; but, to the extent the judgment involves a question of law, the appellate court reviews such question de novo. *Id.* at fn.1, ¶17.

**{¶32}** This court has acknowledged that review of a judgment that originated with a magistrate is not limited to the abuse of discretion standard. In *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, this court said the abuse of discretion standard is the appropriate general standard to apply when reviewing a trial court's adoption of a magistrate's decision. *Id.* at ¶47. However, this court went on to say that a trial court's factual findings are reviewed under the manifest-weight standard. *Id.* at ¶48.

**{¶33}** The majority's analysis of the standard of review misses the point because the issue presented here, i.e., whether Holko breached the contract, involved a legal issue for which this court's review is de novo. While this court and others have

generally applied the abuse of discretion standard in magistrate cases, the Fourth District in *Woody* and the Tenth District in *Lopez* provide compelling reasons why this court should revisit this standard when the underlying issue is legal in nature. Legal issues are simply not discretionary and should not be treated as such simply because the judgment originated with a magistrate. To do so results in the abandonment of our duty to independently review the trial court's legal conclusions.

{¶34} Because the determination of whether Holko breached the contract is a mixed question of law and fact, we should apply the hybrid standard of review.

{¶35} For these reasons, I concur in judgment only.

11