[Cite as *McNichols v. Gouge Quality Roofing, L.L.C.*, 2022-Ohio-3294.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

CLOYD MCNICHOLS, et al.,     :     Case No. 21CA15

       : 

       Plaintiffs-Appellants,     : 

    v.        :     DECISION AND JUDGMENT

       :     ENTRY

GOUGE QUALITY ROOFING,     : 

LLC.        : 

       Defendant-Appellee.

---

APPEARANCES:

Robert R. Goldstein, Columbus, Ohio, for Appellants.

Brian S. Stewart, The Law Office of Brian Stewart, LLC, Circleville, Ohio, for Appellee Gouge Quality Roofing, LLC, for Appellee.

_____

Smith, P.J.

{¶1} Cloyd McNichols and Judith McNichols, "Appellants," appeal the Decision and Entry of the Circleville Municipal Court entered August 26, 2021. Appellants challenge the trial court's application of the Ohio Consumer Sales Practices Act to the facts of the underlying case, along with the trial court's decision which declined to award treble damages and attorney fees in the underlying matter. However, having engaged in a full review of the record, we find the trial court did not err. Therefore, we find Appellants' assignments of error

to be without merit and they are hereby overruled.  The judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} The following facts are gleaned from the testimony given at the parties' bench trial.  In May 2018, Appellants entered a contract with Caleb Gouge for a metal roof installation project on Appellants' residential property, a 100-year-old house located on Hayesville Road in Pickaway County.  Defendant-Appellee (hereinafter "Appellee") is Gouge Quality Roofing, LLC.  The roofing business is owned and managed by Caleb Gouge.

{¶3} Prior to entering the contract, Caleb Gouge prepared two estimates for Appellants.  One estimate was for a "hidden fastener system" which would cost $22,450.00, and which would utilize a heavier type of metal.  The other estimate provided for a 28-gauge "exposed fastener system" at a lesser cost of $15,850.00.  Appellants chose to have an exposed fastener system installed.

{¶4} The roofing job commenced in July 2018.  Caleb Gouge later learned that Appellants were unhappy with the roofing installation.  Mr. Gouge returned to the job site, discussed the issues with Appellants, and offered to perform additional roof repairs.  However, before additional repairs occurred, Appellants filed suit in

April 2019 with the filing of a complaint against Appellee and Caleb Gouge in the Circleville Municipal Court, small claims division.

{¶5} The matter was eventually transferred to the general civil division, and Appellants filed an amended complaint.[1]  Appellants alleged a violation of the Ohio Consumer Sales Practices Act (OCSPA), breach of contract, negligence, breach of implied warranty, and breach of express warranty.  The matter eventually proceeded to a two-day bench trial in August 2020 before a magistrate.  Three witnesses gave lengthy testimony.

{¶6} Appellants first presented the testimony of Karen Chumley, the owner of Expert Roofing and Remodeling LLC.  She testified she had been in the roofing business since 2009 and had owned her own company since 2018.  Her training has consisted of observing the work of roofing installers who explained the installation of different types of roofs to her.  The Magistrate qualified Ms. Chumley as an expert witness in roofing.

{¶7} Ms. Chumley testified she fully inspected Appellants' roof damage in April 2019.  She identified various photographic exhibits.  She testified metal was bent or missing; flashing was incorrect in many areas; a chimney was absolutely destroyed; and open pipes were showing.  She did not think Gouge's roof installation was done to specification, met industry standards, or was done in a

---

[1]Mr. Gouge was dismissed by agreement of the parties.

workmanlike manner.  She described it as the "sloppiest" work she had ever seen.

Ms. Chumley gave Appellants an estimate for repair in the amount of $6,116.99.

The estimate was actually prepared by her employee who entered the pertinent

information into a computer program, Xactimate.

{¶8} On cross-examination, Ms. Chumley admitted that she has not

personally installed roofs.  Her company does not have any certifications from

roofing companies or manufacturers.  She was also unable to identify the location

of the damage on many of the photographs of the roof.

{¶9} Appellant Cloyd McNichols testified he heard that Gouge was a good

roofing company so he contacted Caleb Gouge.  The roof was installed on July 3,

2018.  The job took two days.  Within a week of the job, Mr. McNichols noticed

problems and took photographs.  Mr. McNichols discussed the following issues he

immediately noticed:  dormer filled in with silicone; flashing incorrectly done;

heavy damage on right side of dormer; cracked vinyl; metal screws put into vinyl

siding; metal pieces incorrect; crooked chimneys; water leaks on front and back

porches; debris left behind in attic.

{¶10} On cross-examination, Mr. McNichols admitted he does not perform

residential building construction.  He admitted the home was 100 years old.  He

admitted he chose the cheaper version which was an exposed fastener system.  He

also testified Ms. Chumley, her employee, and he had walked on the roof after Gouge completed the job.

{¶11} On redirect, Mr. McNichols testified just because he chose a lower cost estimate did not mean he expected lower quality. He testified the roof damage was visible before he stepped onto it. Also, he testified, no one discussed the difference between metals with him.

{¶12} Caleb Gouge testified he has worked in construction and roofing over 20 years. Gouge Quality Roofing, LLC has been in business 16 years. His company performs both residential and commercial roofing jobs. He has done roughly 250-300 jobs a year.

{¶13} Mr. Gouge testified he has been hands-on when installing roofs until three years ago. He and his employees are certified on every product they install. "Certification" means they go to plants, do hands-on training, install mock roofs, and are trained by certified installers. The trial court designated Mr. Gouge an expert in roofing contracting.

{¶14} Mr. Gouge testified that the price difference in the two estimates is that the more expensive estimate is for a hidden fastener system using heavier metal with no visible screws. He described it as a "lifetime product." Mr. Gouge testified the estimate for a cheaper option was for an exposed fastener system using a cheaper metal. Also, the screws in the metal were visible. Mr. Gouge testified

there was nothing on the estimate Appellants chose that Gouge did not install.  In

his opinion, Appellants' roof job turned out really well.

{¶15} Mr. Gouge testified he had complaints from Appellants within about a

week after installation.  He went back and found nothing functionally wrong with

the chimneys or the roof.  He thought Appellants' complaints were mostly

aesthetic.  Mr. Gouge did not get complaints about leaks and he did not observe

any.  In his years of experience, leaks were more often caused by siding and

windows, not roofing.  As to the dents in the roof, Mr. Gouge testified that with

thinner metal, someone walking across the roof could dent it.  There is a certain

way people have to be shown how to walk on the roof.

{¶16} The only issue on which Mr. Gouge agreed with Appellants was the

chimney work.  He testified that he does his best to give his customers the correct

expectations.  All houses have "settling," which may affect the decking on which a

roof is attached.  He testified all trash and debris was hauled away at the end of the

job.  Mr. Gouge disagreed with the accuracy of the estimate prepared by

Chumley's company.

{¶17} On October 23, 2020, the Magistrate's Decision was entered.  The

Magistrate found that Appellants failed to prove violations of the Ohio Consumer

Sales Practices Act (OCSPA) by a preponderance of evidence, as alleged in the

first cause of action in the amended complaint.  The Magistrate also found no merit

to the fifth cause of action (breach of express warranty) in the amended complaint.

However, the Magistrate found that Appellants had proven their claims for breach

of contract, negligence, and breach of an implied warranty by a preponderance of

the evidence due to the failure to install the roof in a workmanlike manner (as

alleged in the second, third, and fourth causes of action).  Specifically, the

Magistrate found that Appellants were entitled to damages due to the following

deficiencies caused by faulty installation of the roof:

1) Transition flashing.

2) Damaged vinyl trim.

3) Damaged fascia.

{¶18} The Magistrate also found Appellants did not prove by a

preponderance of the evidence that roof leaks and issues with chimneys were

caused by Appellee.  The Magistrate awarded damages in the amount of $1,603.66

to correct the negligent work.

{¶19} Appellants filed an Objection to the Magistrate's Decision.

Appellants asserted that the Magistrate should have found violations of the OCSPA

and should have awarded associated treble damages and attorney fees.  Appellants

also asserted the manifest weight of the evidence supported a damage award

related to the allegation that Appellee failed to properly re-install a chimney and

remove debris.

{¶20} On August 26, 2021, the trial court agreed in its Decision and Entry as to the Magistrate's determination that the installation of the roof was deficient in three aspects. However, the trial court also found that damages with regard to the chimney work should be added to the total award. The trial court disagreed with and declined to order additional damages based on Appellants' assertion that the findings of negligence and breach of contract necessarily included a finding of violation of the OCSPA. Based on its review, the trial court awarded additional damages for the negligent chimney work. The court also awarded $200.00 for Appellant's technical violation of the OCSPA for failure to provide an itemized list distinguishing charges for materials and charges for labor. The total damage award was then determined to be $2,232.86.

{¶21} This timely appeal followed. Additional pertinent facts will be included below.

## ASSIGNMENTS OF ERROR

I.   THE COURT ERRED IN DECLINING TO ORDER TREBLE DAMAGES AND ATTORNEY FEES BASED ON A FINDING THAT A CONTRACTOR IS ABLE TO ENGAGE IN CONDUCT DETERMINED TO BE NEGLIGENT AND/OR WHICH RESULTS IN A BREACH OF CONTRACT WITHOUT NECESSARILY COMMITTING UNFAIR OR DECEPTIVE ACTS OR PRACTICES AS SET FORTH IN R.C. 1345.02 OR UNCONSCIONABLE ACTS OR PRACTICES SET FORTH IN R.C. 1345.03.

II.    THE COURT ERRED IN NOT CONSIDERING ATTORNEY FEES, AFTER MAKING A RULING THAT THE CONSUMER SALES PRACTICES ACT HAD BEEN VIOLATED BY THE FAILURE OF DEFENDANT TO PROVIDE A WRITTEN BREAKDOWN OF AMOUNTS CHARGED FOR SUPPLIES AND LABOR.

## A. STANDARD OF REVIEW

{¶22} When a party files timely objections to a magistrate's decision, the trial court must independently review the objections to determine whether the magistrate properly determined the factual issues and appropriately applied the law.  Civ.R. 53(D)(4)(d).  *See Woody v. Woody,* 4th Dist. Athens No. 09CA34, 2010-Ohio-6049, at ¶ 19.  Under this de novo standard of review, the trial court may not merely "rubber stamp" the magistrate's decision.  *Knauer v. Keener*, 143 Ohio App.3d 789, 793, 758 N.E.2d 1234 (2001); *Roach v. Roach*, 79 Ohio App.3d 194, 207, 607 N.E.2d 35 (1992).  "Thus, '[t]he trial court should not adopt challenged [magistrate's] findings of fact unless the trial court fully agrees with them—that is, the trial court, in weighing the evidence itself and fully substituting its judgment for that of the [magistrate], independently reaches the same conclusion.' "  *McCarty v. Hayner,* 4th Dist. Jackson No. 08CA8, 2009-Ohio-4540, at ¶ 17, quoting *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (1990).

{¶23} Upon review, the trial court may adopt or reject the magistrate's decision in whole or in part and with or without modification. *See* Civ.R. 53(D)(4)(b). The court also may hear a previously-referred matter, take additional evidence, or return the matter to the magistrate. *Id.* Here, the trial court reviewed the magistrate's decision, affirmed parts of the magistrate's decision, and modified the decision by also finding Appellants were entitled to damages for Appellee's faulty work on the chimneys.

{¶24} An appellate court generally reviews a trial court's judgment under the manifest-weight-of-the-evidence standard. *Woody, supra,* at ¶ 17. We will not reverse a trial court's judgment in a civil action unless it is against the manifest weight of the evidence. A trial court's judgment is not against the manifest weight of the evidence so long as some competent and credible evidence supports it. *See e.g. C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, (1978), syllabus. In determining whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the evidence. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court. *Amsbary v. Brumfield,* 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, at ¶ 11. Instead, we must uphold the judgment so long as the record contains "some

evidence from which the trier of fact could have reached its ultimate factual conclusions." *Id.,* citing *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, at ¶ 9. Moreover, we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. *See, e.g., Seasons Coal,* 10 Ohio St.3d at 80, 461 N.E.2d 1273; *Jones v. Jones,* 4th Dist. Athens No. 07CA25, 2008-Ohio-2476, at ¶ 18. This means that the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 470, 706 N.E.2d 438 (1998); *Stewart v. B.F. Goodrich Co.*, 89 Ohio App.3d 35, 42, 623 N.E.2d 591 (1993). Furthermore, an appellate court should not substitute its judgment for that of the trial court when the record contains competent, credible evidence going to all of the essential elements of the case. *Seasons Coal, supra.* However, to the extent that the judgment involves a question of law, we review the question of law independently and without any deference. *See Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, at ¶ 10.[2]

## LEGAL ANALYSIS

---

[2]*See also Coliadis v. Holko Enercon, Inc.,* 2016-Ohio-8522, 78 N.E.3d 1257, at ¶¶ 29-33, (11th Dist.), J. Rice Concurring in Judgment Only with Concurring Opinion, citing our decision in *Woody*, and explaining that because the determination of whether defendant Holko breached the contract was a mixed question of law and fact, applying the hybrid standard of review was required.

Assignment of Error One

{¶25} Appellants' first assignment of error challenges the trial court's failure to properly apply the OCSPA and the failure to award treble damages. The application of the OCSPA to the facts presents us with questions of law. We review legal determinations de novo without any deference to the trial court. *See Snyder v. Watkins,* 4th Dist. Athens No. 08CA3006, 2008-Ohio-4909, at ¶ 10; *Snyder v. Southeastern Local S.D.,* 171 Ohio App.3d 544, 871 N.E.2d 1250, 2007-Ohio-453 at ¶ 9 (4th Dist.); *Woods v. Oak Hill Community Med. Ctr.*, 134 Ohio App.3d 261, 267, 730 N.E.2d 1037 (4th Dist.1999); *Shockey v. Fouty*, 106 Ohio App.3d 420, 424, 666 N.E.2d 304, 306 (4th Dist.1995).

{¶26} In the appealed-from Decision and Entry, the trial court agreed with the Magistrate's findings that the roof was installed in an unworkmanlike manner and Appellants had proven their cause of action for breach of contract. Under the first assignment of error, Appellants direct us to case law which provides that the failure to perform services in a competent, satisfactory manner has been found to violate the OSCPA, *see State ex rel Celebreeze v. Goldstein*, American Builder and Supply Co., Fairfield C.P. No. 53110, (P.I.F. 3196) (1983), and that a knowing breach of contract is a violation of the OSCPA, *see e.g. Brown v. Spears*, Franklin M.C. No. 8897, 1997 WL 52451 (Aug. 20, 1979). Based on the foregoing, Appellants conclude they are generally entitled to treble damages under the

OSCPA.  For the following reasons, however, we are not persuaded that the trial court erred by finding that negligent or breaching conduct does not necessarily constitute a deceptive or unconscionable act and denying the Appellants a treble damages award in this matter.

{¶27} " 'The Ohio Consumer Sales Practices Act, set forth in R.C. Chapter 1345, is "a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." ' " *Green Maple,* at ¶ 16, quoting *Fink v. Daimler Chrysler Motors Corp.,* 7th Dist. Mahoning No. 03-MA-155, 2004-Ohio-5125, at ¶ 12, quoting *Einhorn v. Ford Motor Co.,* 48 Ohio St.3d 27, 548 N.E.2d 933 (1990).  The OCSPA prohibits suppliers from engaging in two types of practices.  Relevant here, R.C. 1345.02 prohibits suppliers from engaging in "unfair or deceptive" acts.[3]  "[T]he OCSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving * * *." *Green Maple, supra,* quoting *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

{¶28} R.C. 1345.02(B) provides a non-exhaustive list of practices that are considered unfair or deceptive.  *See Green Maple,* ¶ 17; *Great v. Giant Eagle, Inc.,*

---

[3]R.C. 1345.03 prohibits suppliers from engaging in "unconscionable" acts and also provides a  non-exhaustive list of practices considered unconscionable.

2019-Ohio-4582, 135 N.E.3d 846, ¶ 13 (8th Dist.). " ' "Proof of intent is not required to prove a deceptive act under R.C. 1345.02." ' " *See Green Maple, supra,* at ¶ 18, quoting *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 38 (4th Dist.), quoting *Garber v. STS Concrete Co.,* 2013-Ohio-2700, 991 N.E.2d 1225 (8th Dist.). Whether an act is deceptive depends on how the consumer viewed the supplier's act or statement. *Tsirikos-Karapanos v. Ford Motor Co.,* 2017-Ohio-8487, 99 N.E.3d 1203, (8th Dist.) (Internal citations omitted.). And, while not every contract breach constitutes an OCSPA violation, "when a supplier knowingly commits a breach, the breach is likely also an unfair or deceptive act." *Cartwright v. Beverly Hills Floors, Inc.,* 7th Dist. Mahoning No. 11 MA 109, 2013-Ohio-2266.

{¶29} Relative to unfair, deceptive, or unconscionable conduct, R.C. 1345.09(B) provides for an award of treble damages to prevailing plaintiffs as follows:

> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer *may* rescind the transaction or recover * * * three times the amount of the consumer's actual economic damages or two hundred dollars,

whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages * * *.  (Emphasis added.)

{¶30} " ' Treble damages under the OCSPA are punitive in nature, "intended to deter a seller from wrongful conduct." ' " *Green Maple, supra,* at ¶ 33, quoting *Averback, supra,* quoting *Reagans v. Mountain High Coachworks, Inc.,* 117 Ohio St.3d 22, 2008-Ohio-271, 881 N.E.2d 245, ¶ 34.  An appellate court reviews awards of treble damages de novo because determining " ' "whether treble damages are appropriate is a question of law." ' " *Green Maple*, *supra* at ¶ 31, quoting, *Averback v. Montrose Ford, Inc.,* 2019-Ohio-373, 120 N.E.3d 125 ¶ 35 (9th Dist.), quoting *Fleischer v. George,* 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, at ¶ 18.

{¶31} In addition to the OCSPA statutes, two other sources can determine what constitutes an OCSPA violation:  (1) rules adopted by the Ohio Attorney General and found in the Ohio Administrative Code, and (2) court rulings.  See R.C. 1345.05(B)(2) and (F); *Frey v. Vin Devers, Inc.,* 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (6th Dist.1992).  The Ohio Attorney General makes judgments and supporting opinions available for public inspection via its Public Inspection File on its website:  https://opif.ohioattorneygeneral.gov.  This allows consumers, suppliers and lawyers to keep informed of judgments, rights, and duties under the OCSPA.  *Frank v. WNB Group, LLC.,* 2019-Ohio-1687, 135 N.E.3d 1142, ¶ 17 (1st Dist.).  The lack of a prior administrative or court decision does not bar a court

from determining that conduct is unfair, deceptive, or unconscionable based upon the evidence before it. *Id.* at ¶ 19, citing *Hamilton v. Ball,* 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 36 (4th Dist.).

{¶32} In *Nelson v Pieratt,* 12th Dist. Clermont No. CA2011-02-011, 2012-Ohio-2568, the appellate court more concisely explained the prerequisites for an award of treble damages at ¶ 9:

> In other words, for treble damages to be awarded under R.C. 1345.09(B), (1) the act or practice must have been declared to be deceptive or unconscionable by a regulation promulgated by the Attorney General, or (2) an Ohio court must have previously determined that the act or practice violated R.C. 1345.02, 1345.03, or 1345.031 and that court decision must have been made available for public inspection. *White v. Hornbeck,* 9th Dist. No. 01 CA0057, 2002–Ohio–3037, ¶ 8.

We find the *Nelson* opinion to be instructive.

{¶33} The Nelsons brought an action against a home builder for breach of contract, negligence, and violations of the OCSPA. Following a jury trial, the court entered judgment in favor of plaintiffs on the claims for breach of contract and for violations of the OCSPA. However, the Nelsons' request for treble damages was denied. On appeal, the Nelsons argued their entitlement to treble damages based on the jury's findings, which included a finding that a breach of contract had occurred. However, the appellate court disagreed, noting at ¶ 12:

> Although there have been circumstances where a breach of contract or a breach of warranty has constituted a violation of the OCSPA, not every such breach will constitute an OCSPA

violation.  Indeed, a breach of contract is not necessarily rooted in a deceptive act pursuant to R.C. 1345.02. *Wasserman v. Home Corp.,* 8th Dist. No. 90915, 2008-Ohio-5477, ¶ 13. Obviously, a contract can be breached in myriad ways that do not involve deception. *Toth v. Spitzer,* 2nd Dist. No. 17178, 1998 WL 879475, *2 (Dec. 18, 1998).

* * *

Despite its clearly pro-consumer stance, the [OCSPA] was not intended to encompass all aspects or breaches of consumer sales agreements[.] *Lump v. Best Door and Window, Inc.,* 3d Dist. No. 8-01-09, 2002 WL 462863, *9 (Mar. 27, 2002) (Walters, J., concurring). The mere fact that a party has breached a contract or violated a warranty does not give rise to a[n] [O]CSPA claim in the absence of indicia of unfair or deceptive practices associated therewith.  *Id*. at *11 (Walters, J., concurring).

{¶34} The *Nelson* court also distinguished holdings in other Ohio courts, noting that other cited cases wherein a breach of contract was also determined to be a violation of the OCSPA were all specifically premised on a finding that the breach of contract was *knowing. (*Emphasis added.)  *Id*. at ¶ 14 (Internal citations omitted).  For example, in *Brown v. Spears,* Franklin M.C. No. 8897, 1979 WL 52451 (Aug. 20, 1979), the trier of fact specifically found that the intentional breach of a contract constituted an unfair or deceptive act in violation of the OCSPA.  By contrast, in *Nelson,* the jury never found that Pieratt, the homebuilder,

knowingly breached the contract. The jury also made no finding that Pieratt's breach was an unfair or deceptive act in violation of the OCSPA.[4]

{¶35} The appellate court also observed that the Nelsons did not file a transcript of the jury trial so the appellate court had no way of determining on what grounds the jury made a finding of breach or whether the breach and the OCSPA violations were related. Therefore, the appellate court in *Nelson* concluded that plaintiffs were not entitled to treble damages despite the finding of breach of contract.

{¶36} The reasoning set forth in *Nelson* is somewhat applicable herein. Neither the Magistrate's Decision nor the Decision and Entry of the trial court found any intentional or knowing breach of contract by Caleb Gouge on behalf of his company. Fortunately, we do have a transcript of the bench trial.

{¶37} To briefly summarize, Appellant testified that he did not think that the terms of the contract were misrepresented to him at the time the contract was signed. He testified he understood the contract. Mr. Gouge testified that Appellee performed all the terms of the contract and there was nothing in the estimate that Appellee did not install. Based on the evidence before the trial court, we cannot

---

[4]The jury did make specific findings that Pieratt had engaged in several violations of the OCSPA and that among those, several violations were committed knowingly.

say there is evidence that Appellee's breach was intentional, knowing, or "rooted in deception."

{¶38} Furthermore, as indicated, Appellants have also directed us to *Goldstein, supra,* wherein the trial court found that failure to perform home improvement services in a workmanlike manner *and then failing or refusing to correct any substandard work or defect* was a violation of the OCSPA. (Emphasis added.) However, this argument is not persuasive in this matter, given Appellee's attempts to correct the issues Appellants complained of. Mr. Gouge testified that although he was not required to return to Appellants' property and make corrections on the roofing job, he did so. Mr. McNichols' testimony corroborated this evidence. The Magistrate's Decision also observed that Appellee attempted to correct the work to satisfy Appellants and was still attempting to continue those efforts when Appellants instructed Appellee not to return to the job site and thereafter terminated the relationship.

{¶39} Appellants' argument that the trial court's finding that conduct determined to be negligent or in breach of contract does not necessarily constitute unfair, deceptive, or unconscionable practices is contrary to Ohio law is without merit. The evidence presented at the bench trial does not support a finding that Appellee's breach of contract also warrants a finding that the breach constituted a violation of the OCSPA. Consequently, the trial court did not err in declining to

award treble damages to Appellants.  As such, we find no merit to the arguments

contained in Appellants' first assignment of error.  It is hereby overruled.

Assignment of Error Two

{¶40} The OCSPA provides for the award of reasonable attorney fees to the

prevailing party in an action brought under the OCSPA if the supplier has

knowingly committed an act or practice that violates R.C. Chapter 1345.  R.C.

1345.09(F) explicitly provides that a trial court "may" award attorney fees to a

prevailing consumer if "the supplier has knowingly committed an act or practice

that violates the OCSPA."  R.C. 1345.09(F)(2).  OAC 109-4-3-05(D)(12) provides

that in any consumer transaction involving the performance of any repair or service

it shall be a deceptive act or practice for a supplier to:

> Fail to provide the consumer with a written itemized list of
> repairs performed or services rendered, including a list of parts
> or materials * * * and the cost thereof to the consumer, the
> amount charged for labor * * *.

{¶41} At trial, Appellant identified invoices for his attorney's legal fees,

billed at $250.00 an hour.  He testified the bill did not include the time spent in

trial.  Appellant also testified he was satisfied with his attorney's work.  He

admitted that he thought hiring an attorney was "reasonable and necessary" once

the case was transferred to the regular civil division.  He indicated he thought he

had "no choice" but to obtain professional legal representation.

{¶42} In the Decision and Entry, the trial court wrote:

It is undisputed that Defendant failed to provide to Plaintiffs a written breakdown of amounts charged for supplies and labor, thus engaging in a deceptive act or practice under OAC 109:4-3-05(D)(12). R.C. 1345.09(B) provides that when a deceptive or unconscionable act or practice occurs, a consumer is entitled to recover three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater. As there was no testimony presented about actual economic damage attached to Defendant's failure to provide a proper written estimate, Plaintiffs are entitled to recover the amount of $200.00 for that violation.[5]

{¶43} Appellants argue that they were entitled to attorney fees in this matter and the trial court did not consider them. For the reasons which follow, we disagree.

{¶44} This Court's standard of review on a trial court's decision to award attorney fees under the OCSPA is abuse of discretion. *See Green Maple, supra,* at ¶ 81, quoting *Cartwright v. Beverly Hills Floors, Inc.,* 7th Dist. Mahoning No.11 MA 109, 2013-Ohio-2266, at ¶ 41. To award attorney fees under the OCSPA, the court must also "find that the supplier acted 'knowingly' in committing the deceptive/unconscionable act or practice." *Cartwright* at ¶ 41, citing R.C.

---

[5]In its brief, Appellee asserts that the Judge's decision did err by finding technical liability under the OCSPA. Appellee directs our attention to the Magistrate's Decision which held that "the evidence showed that Defendant provided two alternative estimates to Plaintiffs---and that such were in substantial compliance with the requirements of this provision of the Ohio Administrative Code. Further if there were any deficiencies in the estimates provided to Plaintiffs by Defendant, or in the contract or any other documentation involved in this transaction, the Court finds that such were bona fide errors as set forth in R.C. 1345.11" Appellee asserts that the trial court's decision erred by making this finding of bona fide error. However, we decline to consider Appellee's undeveloped argument. Appellee did not file a cross-appeal. One must do so if seeking to modify a judgment in some way. *Smith v. Smith,* 7th Dist. Carroll No. 14CA0901, 2016-Ohio-3223. In the alternative, Appellee requests that we affirm the trial court's $200.00 award for a technical violation of the OCSPA. Our consideration of Appellant's second assignment of error does require that we consider the $200.00 award.

1345.09(F)(2). "Knowledge" for purposes of the OCSPA "means awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness." R.C. 1345.01(E). The Ohio Supreme Court held that "knowingly" means "the supplier need only intentionally do the act that violates the Consumer Sales Practices Act." *Averback v. Montrose Ford, Inc.,* 2019-Ohio-373, 120 N.E.3d 125, ¶ 66 (9th Dist.), quoting *Einhorn v. Ford Motor Co.,* 48 Ohio St.3d 27, 30, 548 N.E.2d 933 (1990). However, the knowing commission of an act that violates the OCSPA does not mandate a court to impose attorney fees. *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶ 27. The court still has the discretion to determine whether to do so and whether it is warranted under the facts of the case. *Id.* And we are mindful that R.C. 1345.09(F) provides that a trial court "may" award attorney fees as opposed to "shall."

{¶45} In this case, the trial court found a technical violation for failure to provide a written breakdown for materials and labor. However, there was no evidence the failure to provide the written breakdown was done with knowledge or intent to deceive. Furthermore, there was no evidence of actual economic damage due to the violation. The Magistrate and the trial court were aware of Appellants' request for attorney fees.

{¶46} In a bench trial, the trial court is presumed to apply the law correctly and to act properly in considering the evidence. *See In re. D.W.,* 1st Dist. Hamilton Nos. C-180644 and C-180654, 2020-Ohio-2707, at ¶ 11; *In re Watson,* 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). Without saying so, the trial court apparently did not find attorney fees warranted under the facts of Appellants' case. Given the record, we do not find the trial court's failure to award attorney fees in this matter to be an unreasonable or arbitrary abuse of discretion. Accordingly, we overrule the second assignment of error.

{¶47} Having found no merit to either of Appellants' assignments of error, we hereby affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**.

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**